UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

U.S. BANK NATIONAL          )
ASSOCIATION, AS TRUSTEE,    )
ON BEHALF OF THE HOLDERS    )
OF THE ASSET BACKED         )
SECURITIES CORPORATION      )
HOME EQUITY LOAN TRUST,     )
SERIES NC 2005-HE8, ASSET   )
BACKED PASS-THROUGH         )
CERTIFICATES, SERIES        )
NC 2005-HE8,                )
                            )
          Plaintiff,        )
                            )
     v.                     )          No. 2:21-cv-00208-JAW
                            )
ERIC RICHMOND, a/k/a ERIC H. )
RICHMOND,                   )
                            )
          Defendant,        )
                            )
     and                    )
                            )
CITIMORTGAGE, INC., f/k/a   )
CITIGROUP MORTGAGE, INC.,   )
                            )
          Defaulted Party.  )

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Applying Maine law, the court concludes that the mortgagee demonstrated its

interest in the promissory note but not in the mortgage and therefore dismisses the

mortgagee's foreclosure count without prejudice, leaving for later resolution the non-

foreclosure-based counts in the complaint.  The court preliminarily determines the

defendant has a right to a jury trial on the plaintiff's breach of contract and breach of

promissory note claims and likely on the quantum meruit claim; if plaintiff maintains

there is no right to a jury trial on these counts, the court orders the plaintiff to explain

why. The court orders the Clerk's Office to place this matter on the next available civil jury trial list.

## I.    PROCEDURAL BACKGROUND[1]

On July 29, 2021, U.S. Bank National Association (U.S. Bank), as trustee, on behalf of the holders of the Asset Backed Securities Corporation Home Equity Loan Trust, Series NC 2005-HE8, Asset Backed Pass-Through Certificates, Series NC 2005-HE8, the mortgagee, filed a foreclosure action against Eric H. Richmond. *Compl.* (ECF No. 1). In its complaint, U.S. Bank claims that on August 9, 2005, Mr. Richmond borrowed $198,000 from New Century Mortgage Corporation, secured by a mortgage deed, on the real property located at 66 Back Meadow Road, Nobleboro, Maine (the Nobleboro Property). *Id.* ¶ 8. U.S. Bank also alleges that, following assignment, it is the current holder of the August 9, 2005 promissory note and mortgage. *Id.* ¶ 10. U.S. Bank further claims that Mr. Richmond failed to pay U.S. Bank in accordance with the terms of the promissory note and that he has failed to make any monthly payments since February 1, 2012. *Id.* ¶ 24. Finally, U.S. Bank claims that Mr. Richmond owes it $345,067.69 and asked the Court to order the foreclosure of the Property pursuant to Maine's Judicial Foreclosure Law. *Id.* at 1-14.

---

[1]    In light of four years of fiercely contested litigation and well over two hundred docket entries, the Court limits the procedural background in this order to the filings relevant to the final disposition of the foreclosure count in this case. The Court provided a comprehensive recitation of the case's entire procedural history shortly before the bench trial in its June 11, 2025 order on motion for leave to file and objection to trial scheduling order. *See Order on Mot. for Leave to File and Obj. to Trial Scheduling Order* at 2-9 (ECF No. 182).

Over the ensuing years, Mr. Richmond deliberately obstructed the foreclosure. He filed a litany of motions and six interlocutory appeals, each dismissed by the First Circuit Court of Appeals as unreviewable. Mr. Richmond ignored eight orders to file an answer to the complaint and, in fact, never answered the complaint at all, despite consistently demonstrating a desire to contest the foreclosure. Mr. Richmond's nearly two-year refusal to file an answer caused a delay in the issuance of a scheduling order, and finally, on June 5, 2023, the Court directed the Court Clerk to enter a general denial of the claims against him to allow this long-delayed case to proceed. *Order Denying Def.'s Mot., Entering General Denial, and Imposing "*Cok*" Warning* at 3 (ECF No. 91). Further, as a result of the offensive and combative language in Mr. Richmond's filings, including personal insults and vulgarity directed at opposing counsel, court personnel, and the presiding judge, the Court after multiple warnings ordered Mr. Richmond restricted from making further filings in this case without the Court's permission pursuant to *Cok v. Family Court of Rhode Island*, 985 F.2d 32 (1st Cir. 1993). *Order on Mot. for Sanctions and Mot. for Judicial Notice* at 10 (ECF No. 157) (Cok *Order*).

On June 16, 2023, U.S. Bank served Mr. Richmond with Requests for Admission to be answered within thirty days under Federal Rule of Civil Procedure 36. *Pl.'s Mot. for Reqs. for Admission to be Deemed Admitted* at 2 (ECF No. 167); *see also Req. for Hr'g Re: Disc. Dispute Pursuant to Loc. Rule 26(b)* (ECF No. 161) (*Pl.'s Req. for Hr'g*). Mr. Richmond never responded to U.S. Bank's Requests for Admission, *Pl.'s Req. for Hr'g* at 1, and on October 9, 2024, U.S. Bank filed a motion for the Court

to deem admitted its Requests for Admission. *Pl.'s Mot. for Reqs. for Admission to be Deemed Admitted*. Mr. Richmond did not respond to the motion, and the Court granted the motion on November 19, 2024, deeming "the facts asserted in U.S. Bank's June 16, 2023 Requests for Admission to be admitted." *Order on Mot. for Reqs. for Admission to be Deemed Admitted* at 4 (ECF No. 169).

The Court held a one-day bench trial on June 23, 2025, at which Attorney Reneau J. Longoria represented U.S. Bank and Mr. Richmond appeared pro se. *Min. Entry* (ECF No. 196); *Tr. of Proceedings* (ECF No. 211) (*Bench Trial Tr.*). With the Court's permission, Mr. Richmond subsequently filed a post-trial brief on July 21, 2015, *Post Trial Brief for Def.* (ECF No. 219) (*Def.'s Br.*), which he supplemented with minor corrections on July 24, 2025, with the Court's permission. *Notice of Correction to Post-Trial Brief* (ECF No. 222) (*Def.'s Correction*). In compliance with the Court's instructions at trial, Plaintiff filed a response brief on August 5, 2025. *[Proposed] Findings of Fact and Conclusions of Law and Resp. to Def.'s Post-Trial Brief* (ECF No. 225) (*Pl.'s Br.*).

Mr. Richmond's reply was originally due by August 15, 2025; however, on August 13, 2025, he filed a motion for extension until ten days after the Court ruled on its order to show cause, and on August 25, 2025, he filed an emergency motion to extend the due date for his reply to September 10, 2025. *Resp. to O.S.C.* (ECF No. 229); *Req. for Permission to Req. Extension of Ct. Mandated Time to File Post-Trial Papers*, Attach. 1 *Def.'s Emer. Mot. for Extension of Time to File Post-Trial Papers* (ECF No. 232). In response to the first motion for extension, the Court granted Mr.

Richmond until August 25, 2025, to file his post-trial reply, *Order* (ECF No. 231), and in response to the second motion, the Court granted Mr. Richmond until September 10, 2025. *Order* (ECF No. 233). On September 15, 2025, Mr. Richmond filed a request to be permitted to file his reply, attaching his proposed reply brief, which the Court accepted.[2]

## II.    ORDER TO SHOW CAUSE

In their response to Mr. Richmond's post-trial memoranda, U.S. Bank questioned whether Mr. Richmond used Artificial Intelligence (AI) to assist his brief-writing, noting that his post-trial memorandum was "replete with incorrect citations." *Pl.'s Br.* at 12.    The Court performed its own examination of Mr. Richmond's post-trial brief, and, having concluded that Mr. Richmond's post-trial

---

[2]    Although late, the Court permitted Mr. Richmond's filing because of his interchange with a Deputy Clerk of Court. On September 10, 2025, Mr. Richmond called the Clerk's Office explaining that Federal Rule of Civil Procedure 6(d) allows a pro se litigant an additional three days to file his reply. Because the third day fell on a Saturday, Mr. Richmond claimed, he would have his reply post marked by the next business day, Monday, September 15, 2025. Although Mr. Richmond is mistaken, as explained below, he discussed the proper due date with the Deputy Clerk, and the Court accepts his reply. Mr. Richmond, however, should be aware that when the Court sets a date for a filing, it is his obligation to docket the filing by that date and Rule 6(d) does not give him an extra three days to do so.

Even though it was cited by Mr. Richmond to support his late filing, Rule 6(d) does not apply to Mr. Richmond's reply.    First, Rule 6(d) says nothing about special deadlines for pro se litigants. Second, Rule 6(d) grants a party *receiving* certain forms of service (e.g., by mail) an extra three days to act, not that the party *effecting* service.    Rule 6(d) lists "the modes of service that allow 3 [extra] days to *act* after being served." Notes of Advisory Committee of 2016 Amendments (emphasis supplied).    To the contrary, Mr. Richmond's reading "would mean that a party who is allowed a specified time to act after making service can extend the time by choosing one of the means of service specified in the rule, something that was never intended by the original rule or the [2005] amendment." *Id.* (explaining that the 2005 Amendment to Rule 6(d) removed ambiguous language that implied the rule extended "not only to a party that has been served but also to a party that has made service").    In other words, Federal Rule of Civil Procedure Rule 6(d) does not apply to Mr. Richmond, because he is not acting upon one of the modes of service applicable to Rule 6(d). Rather, he reads Rule 6(d) to give him an extra three days beyond the extension the Court already granted him – outside the purview of Rule 6(d).

memorandum contained substantial and misleading misquotations and misattributed citations, the Court ordered Mr. Richmond to show cause as to why additional *Cok* restrictions should not be ordered to address his Rule 11 violations. *O.S.C.* (ECF No. 226).  On August 13, 2025, Mr. Richmond filed a response in which he heaped abuse on the Court and Plaintiff's counsel for the handling of this case and responded (in a fashion) to only two of the Court's five questions.  *Resp. to O.S.C.* at 1-5 (ECF No. 229).  In its August 13, 2025 order, the Court found Mr. Richmond's response "unresponsive, largely irrelevant, provocative, and to the extent responsive, patently erroneous" and concluded it would address the appropriate sanction in its final order in this case.  *Order* (ECF No. 231).

## III.    A PRELIMINARY NOTE ON THE COURT'S APPROACH

Before making findings of fact and conclusions of law, the Court addresses several unique aspects of this case.  First, Mr. Richmond again vociferously objects to the Court entering an answer on his behalf generally denying all claims.  *See Def's Brief* at 47-55; *see also Order on Mot. for Reqs. for Admission to be Deemed Admitted* at 5 (ECF No. 169).  At trial, the Court explained at length that it entered a general denial for Mr. Richmond only as a last resort resulting from his yearslong refusal to answer the complaint despite repeated orders to do so.  *Bench Trial Tr.* at 17:2-22:6.  The Court declines to reengage with this issue in this order.

Second, as briefly noted above, the Court's *Cok* order required Mr. Richmond to seek the Court's permission to make filings in this case because of his "use of personal, derogatory, vulgar language that has no place in a court of law."  Cok *Order*

at 10.  Further, at the bench trial, after granting Mr. Richmond permission to file post-trial briefing, the Court expressly reminded him that such filings must comport with the standards of professionalism and decorum traditionally afforded a case in federal court and Mr. Richmond indicated his understanding.  *See Bench Trial Tr.* at 174:23-175:1 (**THE COURT**: Okay. You can put the request in, but I'm allowing you to do it only if you're not nasty, right?  You've gotten that message?  Right?  **MR. RICHMOND**: Understood").

Nonetheless, his substantive arguments aside, Mr. Richmond's trial brief repeatedly violates his promise to treat his fellow litigants and judicial officers with the respect owed to a proceeding in federal court.  *See Def.'s Brief* at 8 ("Defendant's presence at trial was not a choice but a necessity, driven by the First Circuit's maddening foolery in dismissing appeals as non-final judgments . . ."); *id.* at 4 ("I can't get appeals of things that would end the case or cure irreparable harm of being made a ward of the court . . . until this court sticks a knife in my back, so to speak"); *id.* at 45 (calling witness testimony "utter horseshit legally").  For years, the Court has been clear with Mr. Richmond that such inflammatory accusations and vulgar language have no place in a court of law.

Despite Mr. Richmond's deliberate efforts to provoke the Court, the Court has declined to be provoked and instead has ruled strictly on the merits of the foreclosure claim.  Even though it rules in Mr. Richmond's favor on the foreclosure count, the Court does not wish to be mistaken.  It neither condones nor encourages his deplorable conduct in this case.  Mr. Richmond is forewarned.  It is bad enough to act

7

up in front of a federal judge, but the Court will not tolerate such conduct in front of a jury.

## IV.    FINDINGS OF FACT

### A.    A Preliminary Note on Scope of the Record

At trial, Mr. Richmond asked the Court "to put in my own proposed findings of fact and conclusions of law," which the Court permitted. *Bench Trial Tr.* at 174:9-15. Mr. Richmond's post-trial submission, however, does not provide a clearly delineated set of proposed findings of fact.  Instead, Mr. Richmond organizes his brief around discrete legal arguments he asserts are fatal to Plaintiff's foreclosure action, for which he cites factual evidence in support.  Further, Mr. Richmond objects in his post-trial brief to the Court's reliance for findings of fact on the Plaintiff's requests for admission, which were deemed admitted when Mr. Richmond failed to respond to them for over a year and failed to file an objection to the Court's order deeming such requests for admissions admitted, despite the Court's clear instruction to do so within fourteen days. *See Def's Brief* at 47-55; *see also Order on Mot. for Reqs. for Admission to be Deemed Admitted* at 5 (ECF No. 169).

As the Court explained in its order deeming the requests for admissions admitted, robust authority from the Federal Rules of Civil Procedure and First Circuit Court of Appeals hold that a failure to respond to a request for admission, or subsequently to move for its withdrawal, results in the facts being conclusively established, including material facts that conclusively prove a party's claim. *See*

*Order on Mot. for Reqs. for Admission to be Deemed Admitted* at 12-14 (citing Fed. R. Civ. P. 36; *Brook Vill. N. Assocs. v. Gen. Elec. Co.*, 686 F.2d 66, 70 (1st Cir. 1982)).

Nonetheless, while recognizing this caselaw in its order on Plaintiff's motion in limine to admit the admissions for all purposes at trial, the Court "urge[d] Attorney Longoria to present an evidentiary basis to sustain the Plaintiff's foreclosure complaint through testimony and exhibits, rather than relying exclusively on Mr. Richmond's failure to respond to U.S. Bank's request for admissions," explaining that "[i]f U.S. Bank demonstrates at trial through witnesses and exhibits that it is entitled to foreclose Mr. Richmond's Nobleboro property, any judgment will be based on the merits of the complaint and not solely on Mr. Richmond's miscue." *Order on U.S. Bank's Mot. in Lim.* at 14 (ECF No. 183). The Court noted that, "[g]iven Mr. Richmond's status as a pro se litigant, it would be wiser and fairer to Mr. Richmond, and more prudent for Attorney Longoria, to make the evidentiary case on June 23, 2025 that U.S. Bank is entitled to its requested relief." *Id.* At trial, Attorney Longoria did so, presenting witness testimony and documentary evidence rather than relying on the requests for admissions. *See Bench Trial Tr.* at 1-178.

Given the First Circuit's preference for deciding cases on their merits, rather than on technicalities and further based on the Court's discretionary authority whether to grant withdrawals to admissions, the Court in this order makes findings of fact based on the exhibits and witness testimony presented at trial and issues judgment by applying the relevant law to those facts. *See cf. Kuehl v. FDIC*, 8 F.3d 905, 908 (1st Cir. 1994) ("Our federal rules promote the disposition of claims on the

merits rather than on the basis of technicalities, and courts should be reluctant to impose a dismissal with prejudice for a rules violation that is neither persistent nor vexatious, particularly without some review of the merits") (citing *Foman v. Davis*, 371 U.S. 178, 181-82 (1962)); *see also Foss v. Marvic, Inc.*, 994 F.3d 57, 63 (1st Cir. 2021) ("district courts have considerable discretion over whether to permit withdrawal or amendment of admissions made pursuant to Rule 36").

### B.    The Witnesses

#### 1.    Michelle Simon

Michelle Simon serves as Director of Litigation for Select Portfolio Servicing, Inc. (SPS) and has worked at SPS in various roles since February of 2000. *Bench Trial Tr.* at 23:10-19. In her current role, she provides testimony, as required, for accounts serviced by SPS, attends adversarial proceedings, mediations, depositions, and reviews and verifies legal documents. *Id.* at 23:23-24:2. She formerly served as Vice President and Consumer Ombudsman at SPS from 2004 to approximately February 2016, a role in which she was exposed to all business units within SPS to respond to inquiries from regulatory agencies, including the Consumer Financial Protection Bureau and Better Business Bureau. *Id.* at 24:6-13. Before that, Ms. Simon worked as a manager, director, and supervisor within SPS's loss mitigation department and in vendor management. *Id.* at 24:17-23.

### 2. John Doonan, Esq.

John Doonan, Esq. is counsel of record for the Plaintiff who has represented Plaintiff in this proceeding from approximately 2012 until 2021, as well as in an earlier foreclosure proceeding initiated in state court. *Id.* at 121:9-21.

### 3. Eric Richmond

Eric Richmond is the owner and mortgagor of the property located at 66 Back Meadow Road, Nobleboro, ME 04555 (the Nobleboro Property), which he purchased in 1990. *Id.* at 31:7-9; *Pl.'s Trial Ex. 4, Mortgage.*

## C. The First Mortgage

In 1990, Mr. Richmond borrowed money from Citicorp Mortgage, Inc. for his initial purchase of the Property. *Bench Trial Tr.* at 31:7-12. This mortgage was subsequently refinanced with Centex, which was paid off in the amount of $140,469.65 at the closing of a second refinancing wherein Mr. Richmond received $40,622.09. *Id.* at 28:4-16; *Pl.'s Trial Ex.* 1, *HUD Settlement Statement* at 3.[3] Despite this payment, the original Citicorp Mortgage was not discharged of record. *Bench Trial Tr.* at 31:13-17; *HUD Settlement Statement.* However, a title policy generated in August 2005 reflects that the Citicorp mortgage has been paid and is thus no longer a valid encumbrance on the Property. *Bench Trial Tr.* at 31:13-32:1.

---

[3]     Plaintiff provided all its exhibits in a binder with sequential Bates pagination. As the Bates pagination is the only page number included on many documents, the Court adopts the Bates numbering to cite particular pages of Plaintiff's exhibits.

### D.    The Second Mortgage

On August 9, 2005, Mr. Richmond executed a promissory note and mortgage with New Century Mortgage Corporation (New Century) for a total amount of $198,000; the mortgage was recorded in the Lincoln County, Maine Registry of Deeds on September 7, 2005 at Book 3546, Page 230.  *Bench Trial Tr.* at 144:9-10; *Pl's Trial Ex. 3, Promissory Note* at 12; *Pl.'s Trial Ex. 4, Mortgage*.  The promissory note is endorsed in blank by New Century Mortgage Corporation.  *Promissory Note* at 16; *Bench Trial Tr.* at 33:9-15.  The original note is currently held by Plaintiff's counsel on behalf of U.S. Bank and SPS.  *Bench Trial Tr.* at 33:21-24.

In September or October 2005, the mortgage was sold on the secondary market to Credit Suisse First Boston (CSFB) for securitization pursuant to a pooling and servicing agreement between New Century and CSFB.  *Id.* at 35:22-36:5, 72:23-73:5, 73:16-74:6, 90:8-13.  The mortgage was securitized into pool number 2005194; this pool was placed into Asset Backed Securities Corporation Home Equity Loan Trust, Series NC 2005-HE8, Asset Backed Pass-Through Certificates, Series NC 2005-HE8, of which U.S. Bank held the role of trustee.  *Id.* at 36:6-15, 73:16-74:6.  Securitization closed on October 28, 2005, and all loans in the pool were transferred to their investors.  *Id.* at 36:25-37:4.  SPS submits the mortgage has remained in that pool since it was securitized.  *Id.* at 37:9-11.

On April 18, 2012, New Century executed an assignment of the mortgage, through SPS as its attorney-in-fact, to U.S. Bank entered in the Lincoln County,

Maine Registry of Deeds on April 27, 2012 at Book 4516, Page 240. *Pl.'s Trial Ex. 5, Assignment*; *Bench Trial Tr.* at 40:16-19, 77:8-14.

### E.    Select Portfolio Services Involvement

New Century assigned the servicing rights to the mortgage to SPS effective November 29, 2005, and SPS has remained the servicer at all times relevant to this proceeding. *Pl.'s Ex. 14, Notice of Assignment, Sale, or Transfer of Servicing Rights (Goodbye Letter); Bench Trial Tr.* at 30:13-20; 65;23-66:2; 81:16-17: 91:1-10; 101:1-5. As servicer, SPS had the right to administer the terms of the note and mortgage and to act on behalf of the owner of the loan. *Bench Trial Tr.* at 75:12-16.

New Century further issued SPS a limited power of attorney on June 20, 2007 entered in the Lincoln Country Registry of Deeds at Book 4984, Page 165. *Assignment* at 2; *Bench Trial Tr.* at 41:12:20, 81:9-15. New Century also gave SPS the right to assign the mortgage. *Id.* at 41:12-15; *Assignment* at 40.

Bill Koch has served as Document Control Officer for SPS from 2012 through the present. *Bench Trial Tr.* at 40:24-41:6. In this role, Mr. Koch is authorized to sign on behalf of SPS. *Id.* at 41:7-11; *Pl.'s Trial Ex.* 15, *Certificate of Authority*. SPS continued to sign assignments of mortgage on behalf of New Century after October 31, 2007. *Bench Trial Tr.* at 80:22-25.

### F.    New Century Mortgage Corporation's Bankruptcy and Consequences on its Business in Maine

In 2007, New Century declared bankruptcy. *Bench Trial Tr.* at 42:3-6, 76:25-77:4. Relatedly, New Century filed an application of withdrawal from being authorized to do business in the state of Maine with the Maine Secretary of State

dated October 31, 2007. *Def.'s Trial Ex. 1*, *Appl. of Withdrawal*. New Century had been authorized to do business in the state of Maine since November 22, 1996. *Id.*

### G.    Eric Richmond's Nonpayment of the Mortgage

Though he periodically paid late or fell behind, Mr. Richmond was deemed current on his mortgage payments through May 2011. *Bench Trial Tr.* at 47:23-48:7. However, in late 2011, Mr. Richmond again fell behind on his monthly payments. Mr. Richmond submitted his final payment on November 12, 2014 in the amount of $1,449.70, which was attributed to the amount owed as of January 1, 2012. *Id.* at 48:13-19, 66:21-67:2; *Pl.'s Trial Ex. 10*, *SPS Financial Breakdown Summ*. Mr. Richmond has not made the monthly payments on his mortgage since February 2012. *Id.* at 48:13-19. SPS records reflect Mr. Richmond owes an unpaid principal balance of $182,735.92. *Id.* at 83:25-84:3, 132:22-25; *SPS Financial Breakdown Summ*. at 121.

### H.    Eric Richmond Residing in New York and Relocation to Maine

On November 11, 2013, Attorney Doonan sent the original state court foreclosure complaint via certified mail to Mr. Richmond at 227 4th Street, Brooklyn, NY, and on November 14, 2013, Mr. Richmond received and signed for the complaint. *Pl.'s Trial Ex. 16*, *State Ct. Compl*. Mr. Richmond filed for bankruptcy in New York in 2014. *Bench Trial Tr.* at 48:18-19; *Pl.'s Ex. 13*, *U.S. Bankruptcy Court, E. Dist. of N.Y.*, *Bankruptcy Pet*. (*Bankruptcy Pet*.). The bankruptcy petition lists Mr. Richmond's address as 227 4th Avenue, Brooklyn, NY 11215. *Id.*

As of 2017, Mr. Richmond lived in New York and spent much time looking after his father and stepmother in New York and Florida. *Bench Trial Tr.* at 152:3-14. In 2020, Mr. Richmond assisted his father and stepmother in relocating to Maine, and, on November 3, 2020, he registered to vote in Maine listing the Nobleboro Property as his residence. *Id.* at 153:1-6; *Def.'s Trial Ex. 2, Voter Registration.* Mr. Richmond has resided in Maine fulltime since the middle of 2020, *id.* at 153:15-16, and has worked in Rockland for UPS since April 2022. *Id.* at 154:10-11, 170:19-22. Mr. Richmond continued to provide caregiving for his father and stepmother at their home at 5 Elmwood Drive, Saco, Maine; he would visit the Property once or twice a week. *Id.* at 171:4-175:1. Mr. Richmond listed the 5 Elmwood Drive, Saco address as his return address on letters to Plaintiff's counsel and on his notices of appearance in this case, which he avers was a function of the limited hours offered by the Nobleboro, Maine post office. *Id.* at 172:1-7, 173:5-16; *Pl.'s Trial Ex. 8, Richmond Letters and Notices of Appearance.*

## I.    The Notice of Mortgagor's Right to Cure

On April 26, 2021, Attorney Doonan mailed a notice of mortgagor's right to cure to Mr. Richmond at three addresses: (1) 66 Back Meadow Road, Nobleboro, ME 04555; (2) 227 4th Avenue, Brooklyn, New York, 11215; and (3) P.O. Box 139, Nobleboro, Maine 04555-0139. *Pl.'s Ex. 6, Notice of Mortgagor's Right to Cure; Bench Trial Tr.* at 50:22-51:6, 123:14-16. The notice of right to cure was also filed with the Bureau of Consumer Protection. *Bench Trial Tr.* at 51:4-6. The envelope sent to P.O. Box 139 reflects it was sent via certified and first-class mail, that it was redirected to

the 66 Back Meadow Road address, that delivery was attempted on April 28 and May 4, and that the envelope was returned to sender on May 18, 2021. *Notice of Mortgagor's Right to Cure* at 56; *Bench Trial Tr.* at 51:7-11. The envelope sent to 66 Back Meadow Road reflects it was sent via certified and first-class mail, that delivery was attempted on April 29 and May 4, and that the envelope was returned to sender on May 18, 2021. *Id.* The notice sent via certified mail to the Brooklyn address was recorded as delivered to an individual at the address on April 29, 2021. *Id.* at 42, 57-58; *Bench Trial Tr.* at 51:7-14-20, 72:13-15, 81:21-23.

The notice of mortgagor's right to cure states:

| | |
|---|---|
| Payments | $179,636.74 |
| Late Charges | $256.84 |
| Unapplied Balance | -$109.08 |
| **TOTAL TO CURE DEFAULT:** | $179,784.50 |

A portion of the amount due is reasonable interest in the amount of $109,313.50.

*Notice of Mortgagor's Right to Cure* at 43; *Bench Trial Tr.* at 83:25-84:7. These amounts include principal, interest, taxes, and insurance. *Bench Trial Tr.* at 49:25-16; 106:8-11. The principal past due was not included in the notice of mortgagor's right to cure. *Id.* at 132:22-133:9, 133:24-25.

The amount of interest of $109,313.50 included in the notice of right to cure was derived from documents provided by SPS and relied upon by counsel. *Notice of Mortgagor's Right to Cure* at 59; *Bench Trial Tr.* at 124:1-4, 131:22:132:21. The

amounts of past due payments that are due as of the reinstatement good-through date, the late charges, and the credit for unapplied balance all appear on a letter provided by SPS that was included with the notice of mortgagor's right to cure. *Notice of Mortgagor's Right to Cure* at 59; *Bench Trial Tr.* at 54:14-55:5, 106:23-107:5. Additional fees included in SPS's letter, such as interest on advances in the amount of $1.55, late charges in the amount of $256.84, and expenses paid by the servicer (loan level advances) in the amount of $4,863.86 are not included in the notice of right to cure because SPS chose to waive those fees should the mortgagor reinstate the account. *Notice of Mortgagor's Right to Cure* at 63; *Bench Trial Tr.* at 54:25-55:9. SPS's letter dated April 15, 2021 states a payment due date of February 1, 2012 and that the statement expires as of April 21, 2021. *Notice of Mortgagor's Right to Cure* at 59; *Bench Trial Tr.* at 83:9-17.

The total amount to cure default in the letter further includes escrow amounts for taxes and insurance, which accrue when the servicer pays these amounts to protect the mortgagee's interest in the property as a result of Mr. Richmond not paying them. *Bench Trial Tr.* at 85:9-20, 86:12-16. The mortgage did not create an escrow account at the time of origination but provides for a servicer to make taxes and insurance payments if necessary and to recover such amounts from a borrower. *Id.* at 93:14-20; *Mortgage* at 23, § 4. Borrower's Obligation to Pay Charges, Assessments, and Claims ("I will pay all taxes, assessments, and any other charges and fines that may be imposed on the Property and that may be or become superior to this Security Instrument"), *id.* at 23-24, § 5. Borrower's Obligation to Maintain

17

Hazard Insurance or Property Insurance; Use of Insurance Proceeds ("I will obtain hazard or property insurance to cover . . . the Property . . . .  If I do not maintain any of the insurance coverages described above, Lender may obtain insurance coverage at its option and charge me in accordance with Section 9 below"), *id.* at 25-26, § 9. Lender's Right to Protect its Rights in the Property (stating that if Mr. Richmond violates any provision of the mortgage, "then Lender may do and pay for whatever is necessary to protect the value of the Property" and Mr. Richmond "will pay to Lender any amounts, with interest, which Lender spends under this Section 9").  The respective amounts owed for unpaid taxes, insurance and principal are not specifically identified in the notice of right to cure default; however, these amounts are included within a lump sum designated as Payments. *Notice of Mortgagor's Right to Cure* at 43; *Bench Trial Tr.* at 86:1-4, 96:22-97:5.

### J.    The Complaint

On July 29, 2021, U.S. Bank filed a foreclosure complaint in this Court.  *See Pl.'s Trial Ex. 7*, *Ex. Compl.*; *Bench Trial Tr.* at 93:4-7.  In the complaint, paragraph fifteen states U.S. Bank "is the lawful holder and owner of the Note and Mortgage." *Ex. Compl.* at 71; *Bench Trial Tr.* at 58:17-59:2.  Paragraph sixteen of the complaint states that U.S. Bank "hereby certifies that all steps mandated by law to provide notice to the mortgagor pursuant to 14 M.R.S.[] § 6111 and/or Note and Mortgage were strictly performed."  *Ex. Compl.* at 71; *Bench Trial Tr.* at 59:21-59:25.

## V.   CONCLUSIONS OF LAW

Considering the foregoing facts, the Court identifies the statutes and caselaw governing foreclosure under Maine state law, before proceeding to consider the defenses raised by Mr. Richmond at trial.

### A.   Legal Standard for Judgment of Foreclosure and Sale

"In Maine, foreclosure is a creature of statute, see 14 M.R.S. §§ 6101-6325 (2013), and thus, standing to foreclose is informed by various statutory provisions." *Bank of Am., N.A. v. Greenleaf* (*Greenleaf I*), 2014 ME 89, ¶ 9, 96 A.3d 700.  As the Law Court explained in *Greenleaf I*:

> Title 14 M.R.S. § 6321, states that "the mortgagee or any person claiming under the mortgagee" may seek foreclosure of mortgaged property.  *See Bank of Am., N.A. v. Cloutier*, 2013 ME 17, ¶ 15, 61 A.3d 1242.  "[A] mortgagee is a party that is entitled to enforce the debt obligation that is secured by a mortgage." [*Mortg. Elec. Registration Sys., Inc. v.] Saunders*, 2010 ME 79, ¶ 11, 2 A.3d 289 (emphasis omitted).  Because foreclosure regards two documents—a promissory note and a mortgage securing that note—standing to foreclose involves the plaintiff's interest in both the note and the mortgage.

*Id.*  "A plaintiff seeking a foreclosure judgment must comply strictly with all steps required by statute."  *Id.* ¶ 18 (internal quotation marks omitted).

For a plaintiff "to state a claim for foreclosure upon which relief can be granted, [their] complaint must contain a certification of proof of ownership of the mortgage note."  14 M.R.S. § 6321.  "The mortgagee shall certify proof of ownership of the mortgage note and produce evidence of the mortgage note, mortgage and all assignments and endorsements of the mortgage note and mortgage."  *Id.*  Further, "[t]o prevail in a foreclosure action under 14 M.R.S. § 6321, the plaintiff must prove eight conditions, including 'properly served notice of default and mortgagor's right to

19

cure in compliance with statutory requirements.'" *J.P. Morgan Mortg. Acquisition Corp. v. Moulton*, 2024 ME 13, ¶ 10, 314 A.3d 134 (quoting *Greenleaf I*, 2014 ME 89, ¶ 18, 96 A.3d 700; 14 M.R.S. § 6321 ("The mortgagee shall further certify and provide evidence that all steps mandated by law to provide notice to the mortgagor pursuant to section 6111 were strictly performed")).  The Law Court has consistently held that a mortgagor who fails to establish ownership of the mortgage as required under 14 M.R.S. § 6321 lacks standing to bring a foreclosure claim.  *See Greenleaf I*, 2014 ME 89, ¶ 17, 96 A.3d 700; *accord Bank of Am., N.A. v. Greenleaf* (*Greenleaf II*), 2015 ME 127, ¶ 4, 124 A.3d 1122 (explaining, in *Greenleaf I*, the Law Court "explicitly noted that our discussion of the merits was distinct from our standing analysis, and clearly vacated the judgment based on the Bank's lack of standing").

Title 14 M.R.S. § 6111, which applies "to mortgages upon residential property located in this State when the mortgagor is occupying all or a portion of the property as the mortgagor's primary residence and the mortgage secures a loan for personal, family or household use," provides that a mortgagee cannot accelerate maturity of the unpaid balance or otherwise enforce the mortgage based on a mortgagor's default until at least thirty five days after written notice is given to the mortgagor informing him of "the right to cure the default by full payment of all amounts that are due without acceleration, including reasonable interest and late charges specified in the mortgage or note as well as reasonable attorney's fees."  14 M.R.S. § 6111(1).  The statute lists the required contents of the notice (the notice of mortgagor's right to cure) in subsection 1-A, which includes eight items:

A.    The mortgagor's right to cure the default as provided in subsection 1;

B.    An itemization of all past due amounts causing the loan to be in default and the total amount due to cure the default;

C.    An itemization of any other charges that must be paid in order to cure the default;

D.    A statement that the mortgagor may have options available other than foreclosure, that the mortgagor may discuss available options with the mortgagee, the mortgage servicer or a counselor approved by the United States Department of Housing and Urban Development and that the mortgagor is encouraged to explore available options prior to the end of the right-to-cure period;

E.    The address, telephone number and other contact information for persons having authority to modify a mortgage loan with the mortgagor to avoid foreclosure, including, but not limited to, the mortgagee, the mortgage servicer and an agent of the mortgagee;

F.    The name, address, telephone number and other contact information for all counseling agencies approved by the United States Department of Housing and Urban Development operating to assist mortgagors in the State to avoid foreclosure;

G.    Where mediation is available as set forth in section 6321-A, a statement that a mortgagor may request mediation to explore options for avoiding foreclosure judgment; and

H.    A statement that the total amount due does not include any amounts that become due after the date of the notice.

14 M.R.S. § 6111(1-A).  A mortgagee must provide notice of mortgagor's right to cure "to a mortgagor and any cosigner under this section to the last known addresses of the mortgagor and cosigner by both: (1) Certified mail, return receipt requested; and (2) Ordinary first-class mail, postage prepaid."  14 M.R.S. § 6111(2-A)(A).

The statute further clarifies how timing of the notice of mortgagor's right to foreclose should be calculated, explaining "the time when the notice is given to the mortgagor or cosigner is the sooner of: (1) The date the mortgagor or cosigner signs

the receipt or, if the notice is undeliverable, the date the post office last attempts to deliver it under paragraph A, subparagraph (1); and (2) The date the mortgagor or cosigner receives the notice under paragraph A, subparagraph (2)."  14 M.R.S. § 6111(2-A)(B).  "A post office department certificate of mailing to the mortgagor or cosigner is conclusive proof of receipt on the 7th calendar day after mailing notice as provided under paragraph A, subparagraph (2)."  *Id.*

### B.    Discussion

Standing is "the threshold question in every federal case, determining the power of the Court to entertain the suit."  *Warth v. Seldin*, 422 U.S. 490, 498 (1975).  The Maine Law Court has determined satisfaction of 14 M.R.S. § 6321's certification of ownership of the note is necessary to prove standing to bring a foreclosure action.  *Greenleaf I*, 2014 ME 89, ¶ 17, 96 A.3d 700.  Thus, the Court first considers whether U.S. Bank has established its standing to bring a foreclosure claim on the mortgage pursuant to 14 M.R.S. § 6321.  If the Court concludes that the Plaintiff has standing to bring its foreclosure claim, the Court next addresses 14 M.R.S. § 6321's requirement that a mortgagee "produce evidence of the mortgage note, mortgage and all assignments and endorsements of the mortgage note and mortgage," which the Law Court explained in *Greenleaf I* "regards what evidentiary burden the plaintiff must satisfy to *obtain* a foreclosure judgment once the plaintiff's standing has been established."  *Id.* ¶ 22 (citing *Cloutier*, 2013 ME 17, ¶¶ 15-17, 61 A.3d 1242 (distinguishing the standing requirement in section 6321 from the 'procedural prerequisites' necessary to obtain a foreclosure judgment by a party that has already

established its standing)).  Finally, should the Court conclude U.S. Bank has satisfied its evidentiary burden under 14 M.R.S. § 6321, the Court considers whether the record entitles Plaintiff to a foreclosure judgment under 14 M.R.S. § 6111.

### 1.    14 M.R.S. § 6321

### a.    Certification of Ownership in the Complaint

Mr. Richmond argues Plaintiff's complaint fails to adequately certify proof of ownership of the mortgage note and thus it lacks standing to proceed on its claim under Maine law.  *Def.'s Brief* at 32-40.  Plaintiff responds that the contents of its complaint satisfy the certification requirements of 14 M.R.S. § 6321 as this requirement has been interpreted by Maine courts.  *Pl.'s Brief* at 17-18.

Mr. Richmond's argument implicates two Law Court cases and a 2015 legislative amendment; each addressed the certification requirement of 14 M.R.S. § 6321.  The Court briefly reviews these authorities as necessary context.

Before the amendment in 2015, 14 M.R.S. § 6321 set forth the following requirements that govern a mortgage foreclosure in the state of Maine:

> The foreclosure must be commenced in accordance with the Maine Rules of Civil Procedure, and the mortgagee shall within 60 days of commencing the foreclosure also record a copy of the complaint or a clerk's certificate of the filing of the complaint in each registry of deeds in which the mortgage deed is or by law ought to be recorded and such a recording thereafter constitutes record notice of commencement of foreclosure. The mortgagee shall further certify and provide evidence that all steps mandated by law to provide notice to the mortgagor pursuant to section 6111 were strictly performed. The mortgagee shall certify proof of ownership of the mortgage note and produce evidence of the mortgage note, mortgage and all assignments and endorsements of the mortgage note and mortgage.

14 M.R.S. § 6321, ¶ 3 (2013).

In *Bank of America v. Cloutier*, 2013 ME 17, 61 A.3d 1242 (2012), the Law Court held that "certify proof of ownership" in § 6321 did not limit standing to file a foreclosure complaint only to the owner of the promissory note, but rather merely obligates a plaintiff to identify the owner or beneficiary and, if the plaintiff is not the owner, explain the basis for its authority to enforce the note under the Uniform Commercial Code. *See Cloutier*, 2013 ME 17, ¶ 16, 61 A.3d 1242. The *Cloutier* Court continued to explain that the UCC is clear that the holder of an instrument is entitled to enforce it, even if not the owner. *Id.* ¶ 18 ("A holder of an instrument is entitled to enforce it") (citing 11 M.R.S. § 3-1301(1)) ("A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument")). The *Cloutier* Court summed up its holding as "the phrase 'certify proof of ownership of the mortgage note' requires only that a foreclosure plaintiff identify the owner or economic beneficiary and, if it is not itself the owner, prove that it has power to enforce the note." *Id.* ¶ 21.

Then, in *U.S. Bank National Association v. Thomes*, 2013 ME 60, 69 A.3d 411 (2013), the Law Court elaborated on *Cloutier*, explaining that the plaintiff in that case had met its burden of demonstrating its authority to enforce the note "when it admitted in evidence the original note endorsed in blank and elicited testimony that it had physical possession of the note." *Thomes*, 2013 ME 60, ¶ 11, 69 A.3d 411. As the definition of "holder" includes "[t]he person in possession of a negotiable instrument that is payable . . . to bearer," the *Thomes* Court concluded the plaintiff was entitled to a judgment of foreclosure. *Id.* (citing 11 M.R.S. § 1-1201(21)(a) (2012)).

24

However, shortly after these Law Court decisions, the Maine Legislature amended 14 M.R.S. § 6321 in 2015 specifically regarding the certification requirement:

> The foreclosure must be commenced in accordance with the Maine Rules of Civil Procedure, and the mortgagee shall within 60 days of commencing the foreclosure also record a copy of the complaint or a clerk's certificate of the filing of the complaint in each registry of deeds in which the mortgage deed is or by law ought to be recorded and such a recording thereafter constitutes record notice of commencement of foreclosure. The mortgagee shall further certify and provide evidence that all steps mandated by law to provide notice to the mortgagor pursuant to section 6111 were strictly performed. **In order to state a claim for foreclosure upon which relief can be granted, the complaint must contain a certification of proof of ownership of the mortgage note.** The mortgagee shall certify proof of ownership of the mortgage note and produce evidence of the mortgage note, mortgage and all assignments and endorsements of the mortgage note and mortgage.

14 M.R.S. § 6321, ¶ 3 (2015) (emphasis of 2015 amended language supplied); *see also* 2015 Me. HP 267.

The Court concludes the Maine Legislature's 2015 amendment revises not the contents of the certification, but rather the timing of when it must be provided. 14 M.R.S. § 6321 (2015) ("In order to state a claim for foreclosure upon which relief can be granted, *the complaint must contain* a certification of proof of ownership of the mortgage note") (emphasis supplied). The amendment provides that this certification is required in the complaint and, absent certification in the complaint, cannot be proven at trial, as the Law Court allowed in *Thomes*. *Thomes*, 2013 ME 60, ¶ 11, 69 A.3d 411. The Legislature did not, however, change the language of the statute as to what constitutes a sufficient certification.

25

In *Cloutier*, the Law Court explained what is required of a certification for the purposes of a foreclosure action; to certify proof of ownership of a mortgage note, a plaintiff must "identify the owner or economic beneficiary of the note and, if the plaintiff is not the owner, to indicate the basis for the plaintiff's authority to enforce the note pursuant to Article 3-A of the UCC." *Cloutier*, 2013 ME 17, ¶ 16, 61 A.3d 1242. Here, the complaint states at paragraph fifteen: "The Plaintiff, U.S. Bank National Association, as trustee, on behalf of the holders of the Asset Backed Securities Corporation Home Equity Loan Trust, Series NC 2005-HE8, Asset Backed Pass-Through Certificates, Series NC 2005-HE8, is the lawful holder and owner of the Note and Mortgage." *Compl.* ¶ 15. The complaint therefore meets the standard for a certification under *Cloutier* by "identify[ing] the owner or economic beneficiary of the note" and *Cloutier*'s second clause is inapposite, as Plaintiff identified itself as the owner.

Mr. Richmond insists that *Cloutier* is entirely a dead letter and that a complaint must contain the word "certify" or its equivalent to satisfy 14 M.R.S. § 6321 post-2015 amendment. However, he provides no cognizable authority in support of this claim[4] and the Court disagrees with his interpretation as a matter of law and applies the definition of "certify" stated by the Law Court in *Cloutier*, 2013 ME 17, ¶ 16, 61 A.3d 1242. Notably, in *Homeward Residential, Inc. v. Gregor*, 2015 ME 108, 122 A.3d 947, specifically addressing the 2015 amendment, the Law Court explained

---

[4]    In his post-trial brief, Mr. Richmond cited cases in support of the proposition that a complaint must contain the word, "certify" or its equivalent to satisfy the requirements of 14 M.R.S. § 6321. *Def.'s Post-Trial Br.* at 30. However, as the Court described in its order to show cause, Mr. Richmond's citations were erroneous. *O.S.C.* at 8-10.

"[t]he stated purpose of the amendment is to require the plaintiff in a foreclosure action to identify the owner of the promissory note at the outset of the litigation 'when the parties most need that information as they engage in mediation and loan modification efforts.'" *Gregor*, 2015 ME 108, ¶ 13 n.10, 122 A.3d 947 (quoting Summary, Comm. Amend. A to L.D. 401, No. H-257 (127th Legis. 2015)).  Here, paragraph fifteen of the complaint provides the necessary information to identify the owner of the promissory note at the outset of the litigation and thus satisfies the Law Court's interpretation of the statute as amended by the Legislature in 2015.

In further independent support for this conclusion, Black's Law Dictionary defines "certify" as "1. To authenticate or verify in writing. 2. To attest as being true or as meeting certain criteria."  *Certify*, Black's Law Dictionary (10th ed. 2014). Under Federal Rule of Civil Procedure 11, in making any written submission to the Court, "an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: . . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]"  FED. R. CIV. P. 11(b).  Therefore, by submitting the complaint on the record in this case, Plaintiff has certified the truth of its statement that U.S. Bank is the lawful holder and owner of the promissory note and mortgage.

Based on the foregoing, the Court concludes that Plaintiff's complaint satisfies the certification requirement of 14 M.R.S. § 6321 and that Mr. Richmond's argument

that Plaintiff lacks standing to bring a foreclosure action for failure to certify ownership of the note in the complaint fails.

### b.  Evidence of Ownership of the Note and Mortgage

The Court turns next to 14 M.R.S. § 6321's "procedural prerequisite," *Greenleaf I*, 2014 ME 89, ¶ 22, 96 A.3d 700 (citing *Cloutier*, 2013 ME 17, ¶¶ 15-17, 61 A.3d 1242), that the mortgagee must "produce evidence of the mortgage note, mortgage and all assignments and endorsements of the mortgage note and mortgage" to obtain a foreclosure judgment under 14 M.R.S. § 6321.  As this statutory requirement encompasses both the promissory note and mortgage, the Court addresses each in turn.

### i.  The Note

The parties do not dispute that U.S. Bank is the present and lawful holder of the promissory note.  In *Greenleaf I*, the Law Court considered how a mortgagee can establish an interest in a promissory note, writing:

> Because a mortgage note is a negotiable instrument, 11 M.R.S. § 3-1104(1) (2013), the enforceability of the plaintiff's interest in the note is governed by Maine's [UCC], 11 M.R.S. § 3-1301 (2011).  *Wells Fargo Bank, N.A. v. Burek*, 2013 ME 87, ¶ 18, 81 A.3d 330; *see* 11 M.R.S. § 1-1101(1) (2013).  Section 3-1301 permits a party to enforce a note if it is the "holder" of the note, that is, if it is in possession of the original note that is indorsed in blank.  11 M.R.S. § 1-1201(5), (21)(a) (2013); 11 M.R.S. § 3-1301(1).

*Greenleaf I*, 2014 ME 89, ¶ 10, 96 A.3d 700.  The *Greenleaf I* Court concluded that the plaintiff had established possession of the note endorsed in blank, and in so doing had proven its right to enforce the debt.  *Id.* ¶ 11.

The case at bar is highly analogous to *Greenleaf I*, as the parties do not dispute that U.S. Bank presently possesses the promissory note, which was endorsed in blank. *Promissory Note* at 16; *Bench Trial Tr.* at 33:9-24. Consistent with *Greenleaf I*, Plaintiff has "proved its status as holder of the note and therefore enjoys the right to enforce the debt". *Greenleaf I*, 2014 ME 89, ¶ 11, 96 A.3d 700 (citations omitted).

### ii.        The Mortgage

Turning to the mortgage, *Greenleaf I* again provides a useful synopsis of the law relevant to proving ownership of a mortgage in a foreclosure action. As the Law Court explained, "[u]nlike a note, a mortgage is not a negotiable instrument. Thus, whereas a plaintiff who merely holds or possesses—but does not necessarily own—the note satisfies the note portion of the standing analysis, the mortgage portion of the standing analysis requires the plaintiff to establish ownership of the mortgage." *Id.* ¶ 12 (citation omitted). In *Greenleaf I*, the Law Court reflects on *Deutsche Bank National Trust Co. v. Wilk*, 2013 ME 79, 76 A.3d 363, in which it accepted the bank's ownership of the note based on possession but vacated the trial court's judgment of foreclosure because one in the series of purported assignments submitted in support of the foreclosing bank's ownership was dated two weeks before the assignor had acquired the mortgage from its predecessor. *Id.* In *Greenleaf I*, the Law Court similarly concluded that the assignments submitted on the record failed to establish that the foreclosing bank owned the relevant mortgage, and thus the bank lacked standing to foreclose. *Id.* ¶ 17.

Here, Mr. Richmond argues U.S. Bank was unable to demonstrate its ownership of the mortgage based on two failures: first, that it provided no documentary evidence regarding the mortgage's purported sale by New Century to CSFB for securitization in 2005, and second, that SPS lacked authority to assign the mortgage from New Century to U.S. Bank in 2012 because New Century had withdrawn its authority to conduct business in the state of Maine in 2007. *Def.'s Brief* at 27-32. Plaintiff contends U.S. Bank is the lawful owner of the mortgage based on valid assignments. *Pl.'s Brief* at 3-5.

Maine foreclosure law is clear on this point. For a foreclosing mortgagee "to state a claim for foreclosure upon which relief can be granted, [their] complaint must contain a certification of proof of ownership of the mortgage note." 14 M.R.S. § 6321. "The mortgagee shall certify proof of ownership of the mortgage note and produce evidence of the mortgage note, mortgage and all assignments and endorsements of the mortgage note and mortgage." *Id.* Accordingly, "the standing analysis requires the plaintiff to establish ownership of the mortgage." *Greenleaf I*, 2014 ME 89, ¶ 12, 96 A.3d 700 (citation omitted).

Because U.S. Bank has failed to prove its ownership of the mortgage, its foreclosure count fails. Although U.S. Banks claims ownership of the mortgage through a purported sale between New Century and CSFB, which through a pooling and servicing agreement placed the mortgage in the 2005-HE8 trust, *Bench Trial Tr.* at 72:20-73:5, 73:25-74:6, U.S Bank provides no documentary evidence to establish the details of this purported sale. The only evidence came during Ms. Simon's trial

testimony, when she explained the reference to CSFB on the HUD Settlement appeared by virtue of the mortgage's sale by New Century to CSFB for securitization within a few months of its origination.

> **Q**. As I read it, it says investor name CS First Boston. Can you explain how -- how that name got on there when it was a New Century mortgage?
>
> **A**. Yes. As I testified earlier, when loans are originated shortly thereafter when they're securitized they're sold on the secondary market. New Century was known for selling many of their loans to DLJ, which was a business that was acquired by CS First Boston in 2000.
>
> **Q**. Okay. So you're telling me the loan was sold to CS First Boston almost immediately upon being signed?
>
> **A**. Within a few months it was securitized, yes.
>
> . . . .
>
> **Q**. So I'll try to be direct in my question. The possession of the mortgage or the ownership of the mortgage was in CS First Boston in 2005.
>
> **A**. It was transferred to them to be securitized so DLJ receives the loan, per the pooling and servicing agreement it is placed into the trust where U.S. Bank is the trustee in the 2005-HE8 trust.

*Bench Trial Tr.* at 72:20-73:5; *id.* at 73:25-74:6. Moreover, even if U.S. Bank had provided the pooling and servicing agreement described in Ms. Simon's testimony, such an agreement would only trace the transfer of ownership from CSFB to the 2005-HE8 trust; it would not prove how ownership was transferred from New Century to CSFB and thus fails to produce "evidence of the mortgage note, mortgage *and all assignments* and endorsements of the mortgage note and mortgage." 14 M.R.S. § 6321 (emphasis supplied).

Furthermore, New Century's 2007 bankruptcy is fatal to U.S. Bank's foreclosure count. It is undisputed that New Century withdrew its authority to

conduct business in the state of Maine on October 31, 2007, *Appl. of Withdrawal*, prior to the assignment from New Century to U.S. Bank, executed by SPS, on April 18, 2012. *Assignment*. The Court further heard testimony that New Century's bankruptcy took place in 2007, though no certificate of cancellation was introduced into evidence. *Bench Trial Tr.* at 42:3-6, 76:25-77:4. The Court further notes an inconsistency with the prior testimony that the loan had been sold to CSFB for securitization, and subsequently placed into the 2005-HE8 trust, in 2005 with the purported assignment from New Century to U.S. Bank in 2012. *See Bench Trial Tr.* at 72:20-73:5, 73:25-74:6.

The Court could stop here, but given the chain of title issues presented in this case, the Court turns to an analogous foreclosure action recently before the Superior Court (Cumberland County, *McKeon, J.*) to further illustrate why U.S Bank lacks standing to raise the foreclosure count in this action.

### iii.    Recitation of Deutsche Bank Trust Company Americas v. Kendall

The Cumberland County Superior Court's recent decision in *Deutsche Bank Trust Company Americas v. Kendall*, RE-17-303 (Me. Super. Ct., Cum. Cnty., Feb. 7, 2024), *vacated on other grounds*, *Deutsche Bank Trust Company Americas v. Kendall*, Mem-25-54, 2025 Me. Unpub. LEXIS 55 (May 13, 2025), is consistent with this Court's analysis. In that case, the mortgage had purportedly been assigned from Homecomings Financial, LLC, by its attorney-in-fact Ocwen Loan Servicing, LLC, to Deutsche Bank in November 2013. *Kendall*, slip op. at 4. However, the court in that case noted that the purported assignment was executed on July 20, 2017, despite

evidence being presented that Homecomings Financial, LLC had declared bankruptcy in 2013 and cancelled its right to do business as of February 26, 2014. *Id.* The defendant mortgagor in *Kendall* argued that any authority Ocwen Loan Servicing had to assign mortgages on behalf of Homecomings Financial, LLC ceased to exist after it had withdrawn from the state and ceased to exist because of its bankruptcy. *Id.* at 4-5.

To resolve the question, the Cumberland County Superior Court turned to the Restatement (Third) of Agency, which states that "when a principal that is not an individual ceases to exist or commences a process that will lead to cessation of its existence or when its powers are suspended, the agent's actual authority terminates except as provided by law." *Id.* at 5 (quoting RESTAT. 3D OF AGENCY, § 3.07(4) (AM. L. INST. 2006)). Noting the Restatement provides "[t]he circumstances under which a person that is not an individual ceases to exist are governed by the legal regime by virtue of which the person has legal personality," *id.* (citing RESTAT. 3D OF AGENCY, § 3.07 cmt. c), and that Homecomings Financial, LLC was organized under the laws of Delaware, the Cumberland County Superior Court consulted Delaware's Limited Liability Company Act, codified as 6 Del. C. § 18-803(b)), which provides that "[u]pon dissolution of a limited liability company and until the filing of a certificate of cancellation . . . the persons winding up the limited liability company's affairs may, in the name of, and for and on behalf of, the limited liability company . . . dispose of and convey the limited liability company's property." *Id.* (quoting 6 Del. C. § 18-803(b)) (citation corrected) (*Kendall* Court's alterations). The court noted that it had

33

not been provided Homecomings Financial, LLC's certificate of cancellation in Delaware, but "the parties had stipulated that its certificate of cancellation was effective in Maine on February 26, 2014 and the court heard testimony of Sally Torres that referenced Homecomings Financial, LLC's bankruptcy as occurring in 2012 and 2013." *Id.*

The *Kendall* Court concluded that the plaintiff mortgagee had provided no basis for the court to conclude "that Ocwen Loan Servicing had the authority to act as Homecoming Financial, LLC's agent after Homecomings Financial, LLC cancelled its business operations after the bankruptcy." *Id.* at 5-6. The Court continued that an assignment can only assign property rights actually held by the assignor, noting that evidence had been presented that Homecomings Financial, LLC had entered bankruptcy and gone out of business in the period between 2012 and 2014, such that "the court cannot find that Homecomings Financial, LLC still had ownership rights in the Kendall mortgage" or "in any mortgage by the time Ocwen purported to assign it to Plaintiff on Homecomings' behalf in 2017. The court simply does not know the ownership of the mortgage coming out of bankruptcy." *Id.* at 6. For this reason, among others, the *Kendall* Court concluded:

> The evidence of ownership of the mortgage presented to the court leaves the court to speculate as to how, if at all, Plaintiff Deutsche Bank Trust Company Americas came to be the owner of the Kendall's mortgage. Plaintiff has not met its burden to show the requisite ownership of the mortgage sufficient to satisfy the standing requirement that Plaintiff is the mortgagee within the meaning of the foreclosure statute.

*Id.* at 9 (citing *Greenleaf I*, 2014 ME 89, ¶¶ 9, 12, 96 A.3d 700). The *Kendall* Court thus entered judgment in favor of the mortgagor defendants. *Id.*

Notably, the plaintiff mortgagee in *Kendall* moved to amend and reconsider judgment and for reconsideration of facts on February 29, 2024, arguing information not previously considered by the court established its ownership of the mortgage and standing to foreclose. *Deutsche Bank Trust Co. Ams. v. Kendall*, RE-17-303, *Pl.'s Mot. Pursuant to Rules 52(b) and 59 and Incorporated Proposed Findings of Fact and Conclusions of Law* (Me. Super. Ct., Cum. Cnty., Feb. 29, 2024). On review, the *Kendall* Court notes that, even if the new submissions, including a pooling and service agreement between Residential Accredit Loans, Inc., Residential Funding Company, LLC, and Deutsche Bank Trust Company Americas, are taken as true, the contents still did not establish Deutsche Bank Trust Company Americas owned the mortgage. *Deutsche Bank Trust Co. Ams. v. Kendall*, RE-17-303, slip op. at 6 (Me. Super. Ct., Cum. Cnty., July 15, 2024). While the servicing and pool agreement may be sufficient to demonstrate that Residential Accredit Loans, Inc. transferred the mortgage into the relevant trust, the *Kendall* Court reasoned, this document did not prove how ownership of the mortgage was transferred from Homecomings Financial, LLC, the original mortgagor, to Residential Accredit Loans, Inc. *Id.* "Without this, Plaintiff still cannot establish that it has standing to foreclose because the foreclosing mortgagee must produce 'evidence of the mortgage note, mortgage *and all assignments* and endorsements of the mortgage note and mortgage." *Id.* (quoting 14 M.R.S. § 6321).

The *Kendall* Court continued that the plaintiff mortgagees "attempted to remedy the 'chain of ownership' problem with the 2017 quitclaim assignment"

purportedly evidencing transfer of the mortgage from Homecomings Financial, LLC to Deutsche Bank Trust Company Americas in 2017. *Id.* However, the *Kendall* Court rejected this argument, explaining:

> Plaintiff seeks to have the court find both that Residential Accredit Loans, Inc. transferred the mortgage to Plaintiff on or before February 27, 2007, *and* that Homecomings Financial, LLC assigned its interest in the mortgage to Plaintiff on July 20, 2017. (Pl.'s Proposed Findings of Fact ¶¶ 20-21, 24, 36-40.) Both cannot be true. Either the mortgage somehow got to Residential Accredit Loans, Inc. and was transferred to the Trust in 2007 or Homecomings Financial, LLC, despite bankruptcy, still had some interest in the mortgage to convey in 2017. Neither is convincing.

*Id.* The *Kendall* Court thus reiterated its conclusion that the plaintiff mortgagee had failed to prove its standing to foreclose on the mortgage and denied its motion to amend and reconsider judgment. *Id.* at 8.

Deutsche Bank appealed the Superior Court judgment to the Maine Supreme Judicial Court. The Maine Law Court reviewed the Cumberland County Superior Court's judgment and, on May 13, 2025, concluded "there was sufficient evidence in the record to support the court's determination that Deutsche Bank lacked standing to foreclose, and the record does not compel a different result." *Deutsche Bank Trust Company Americas v. Kendall*, Mem-25-54, 2025 Me. Unpub. LEXIS 55, at *1 (May 13, 2025) (citations omitted). The Law Court continued that "[r]ather than entering a judgment in favor of the Kendalls, however, the court should have dismissed the case without prejudice for lack of standing." *Id.* at 1-2. The Law Court thus vacated the Superior Court's judgment and remanded the case to the Superior Court "to enter judgment dismissing the case for lack of standing." *Id.* at 2.

36

####    iv.    Application of *Kendall* to the Case at Bar

The Court's decision in this case is consistent with the holding in *Kendall*. First, the record reflects two separate paths from which the mortgage in this case purportedly was transferred from the original mortgagee, New Century, to the plaintiff mortgagee seeking to foreclose, U.S. Bank. One path is through a purported sale, at an unspecified date shortly after origination, to CSFB, who then placed it in the 2005-HE8 trust. *See Bench Trial Tr.* at 72:20-73:5, 73:25-74:6. Plaintiffs submit that the mortgage has remained in this trust since that time. *Id.* at 37:9-11. However, Plaintiffs provide no documentary evidence to establish the details of this purported sale and, though testimony described a pooling and servicing agreement through which the mortgage was placed in the 2005-HE8 trust, the *Kendall* Court persuasively explained why, even if taken as true, such an agreement would only trace the transfer of ownership between CSFB and the 2005-HE8 trust; it would not prove how ownership was transferred between New Century and CSFB and thus fails to produce "evidence of the mortgage note, mortgage *and all assignments* and endorsements of the mortgage note and mortgage." *See Kendall*, RE-17-303, slip op. at 6 (Me. Super. Ct., Cum. Cnty., July 15, 2024) (quoting 14 M.R.S. § 6321). The *Kendall* Court reached this conclusion even when presented the relevant pooling and servicing agreement; here, this document was not entered into evidence for the Court to review.

Next, the 2012 assignment submitted by U.S. Bank in the case at bar presents similar concerns the *Kendall* Court resolved against Deutsche Bank regarding the

37

purported 2017 assignment in that case. There, the parties agreed that Homecomings Financial, LLC cancelled its right to do business in the state on February 26, 2014, and the court heard evidence that Homecomings Financial, LLC's bankruptcy had occurred in 2012 and 2013, prior to the purported assignment executed by Ocwen Loan Servicing on its behalf July 20, 2017. *See Kendall*, RE-17-303, slip op. at 4 (Me. Super. Ct., Cum. Cnty., Feb. 7, 2024).

In this case, it is undisputed that New Century withdrew its authority to conduct business in the state of Maine on October 31, 2007, *Appl. of Withdrawal*, prior to the assignment from New Century to U.S. Bank, executed by SPS, on April 18, 2012. *Assignment*. The Court further heard testimony that New Century's bankruptcy took place in 2007, though no certificate of cancellation was produced into evidence. *Bench Trial Tr.* at 42:3-6, 76:25-77:4.

As the *Kendall* Court noted, the Restatement (Third) of Agency provides that "when a principal that is not an individual ceases to exist or commences a process that will lead to cessation of its existence or when its powers are suspended, the agent's actual authority terminates except as provided by law," a determination guided by the laws of the state in which the principal is incorporated. RESTAT. 3D OF AGENCY, § 3.07(4); *id.* cmt. c ("The circumstances under which a person that is not an individual ceases to exist are governed by the legal regime by virtue of which the person has legal personality"). While the principal in *Kendall* was a Delaware corporation, New Century was a corporation "which exist[ed] under the laws of California." *See Mortgage* at 18.

As a California corporation, New Century's dissolution is governed by California Corporations Code § 17707.06, which states:

> A limited liability company that has filed a certificate of cancellation nevertheless continues to exist for the purpose of winding up its affairs, prosecuting and defending actions by or against it in order to collect and discharge obligations, disposing of and conveying its property, and collecting and dividing its assets. A limited liability company shall not continue business except so far as necessary for its winding up.

Cal. Corp. C. § 17707.06. As in *Kendall*, the Court is not aware of any authority under the California statute or otherwise to support a conclusion that SPS had authority to assign the mortgage on New Century's behalf following New Century's cancellation of business operations after its bankruptcy and withdrawal from the state of Maine in 2007, and further cannot conclude that New Century retained ownership rights of the mortgage by the time SPS purportedly assigned it to U.S. Bank on New Century's behalf in 2012. *See Kendall*, RE-17-303, slip op. at 5-6 (Me. Super. Ct., Cum. Cnty. Feb. 7, 2024). The *Kendall* Court aptly described the situation in its statement: "[t]he court simply does not know the ownership of the mortgage coming out of the bankruptcy." *Id.* at 6.

In its post-trial brief, U.S. Bank directs the Court to 33 M.R.S. § 353-A, which it submits "specifically provides that an assignment recorded for at least two years "may not be held invalid by reason of: A. The lack of authority . . . for their execution or delivery." *Pl.'s Brief* at 5 (quoting 33 M.R.S. § 353-A(3)) (citation corrected) (Plaintiff's alterations). This citation is inapposite for several reasons. First, this statute, titled "Miscellaneous Defects," contemplates actions taken by defectively formed corporations, not whether an agent can continue to act on a principal's behalf

39

after the principal has ceased to exist. Second, the subsection cited by Plaintiff applies to "[a] corporation or other legal entity organized or attempted to be organized under the laws of this State for more than 20 years and not yet declared to be invalid . . . ." 33 M.R.S. § 353-A(3). Here, New Century was organized under the laws of California, not Maine, it registered to do business in the state of Maine less than twenty years ago in 1996, and it had withdrawn its ability to validly do business in 2007 prior to the contested action. *See Mortgage* at 18; *Appl. of Withdrawal.*

Finally, again replicating the circumstances of *Kendall*, U.S. Bank in this case posits two alternative pathways from which ownership of the mortgage was transferred from New Century to U.S. Bank; however, in so doing, Plaintiff presents two mutually exclusive chains of title. Plaintiff seeks to have the Court conclude both that New Century transferred the mortgage to CSFB in 2007, at which time it was placed in the 2005-HE8 trust where it remains to date, and also that New Century assigned the mortgage to U.S. Bank as trustee for the 2005-HE8 trust in 2012. *See Pl.'s Brief* at 4-5. "Both cannot be true. Either the mortgage somehow got to [CSFB] and was transferred into the Trust in [2005] or [New Century], despite bankruptcy, still had some interest in the mortgage to convey in [2012]. Neither is convincing." *Kendall*, RE-17-303, slip op. at 6 (Me. Super. Ct., Cum. Cnty., July 15, 2024).

For the foregoing reasons, the Court concludes U.S. Bank has failed to establish its ownership of the mortgage and "the court should [] dismiss[] the case without prejudice for lack of standing. *Kendall*, Mem-25-54, 2025 Me. Unpub. LEXIS 55 at *1-2 (May 13, 2025) (citing *Greenleaf II*, 2015 ME 127, ¶¶ 6-9, 124 A.3d 1122).

Under Maine law, a mortgagee must prove a legal interest in both the promissory note and mortgage to succeed in a statutory foreclosure action. *Greenleaf I*, 2014 ME 89, ¶ 9, 96 A.3d 700. As U.S. Bank has failed to prove its interest in the mortgage, it fails in its foreclosure count.

## VI.    STATUS OF THE CASE

As the Court noted, in *Kendall*, the Superior Court had entered a judgment in favor of the mortgagors and, in its decision, the Maine Supreme Judicial Court held this was in error. *Kendall*, Mem-25-54, 2025 Me. Unpub. LEXIS 55 at *1-2 (May 13, 2025). The *Kendall* Court wrote:

> Rather than entering a judgment in favor of the Kendalls, however, the court should have dismissed the case without prejudice for lack of standing.

*Id.* at 1 (citations omitted). Following the Law Court's lead in *Kendall*, the Court dismisses Count One – the foreclosure count – of Plaintiff's Complaint without prejudice.

There are four other counts in U.S. Bank's complaint: Count Two – Breach of Note; Count Three – Breach of Contract, Money Had and Received; Count Four – Quantum Meruit; and Count Five – Unjust Enrichment. *Compl.* at 6-11. At the outset of the trial, the Court discussed with counsel for U.S. Bank and with Mr. Richmond, the disposition of the remaining counts. *Bench Trial Tr.* at 13:19-16:19. Mr. Richmond claimed he had the right to a jury trial on all counts, including the foreclosure, and U.S. Bank argued that there was no right to a jury trial on any of the counts. *Id.* The Court ruled that there is no right to a jury trial in the foreclosure action and confirmed that U.S. Bank was proceeding solely on the foreclosure count

at the time. Attorney Longoria represented that if U.S. Bank prevailed on the foreclosure count, she would dismiss the remaining counts. *Id.* The Court stated that if U.S. Bank did not prevail, it would resolve whether there is a right to a jury trial on the remaining counts. *Id.*

During this colloquy, Attorney Longoria asserted that there is no right to a jury trial under the contract action for the note, unjust enrichment, and the other counts, since they "all fall under the Court's equity jurisdiction." *Id.* at 16:3-12. Unless controlled by a statute, the common law rules on entitlement to a jury trial prevail under the Seventh Amendment. U.S. CONST., amend. VII ("In Suits at common law . . . the right to trial by jury shall be preserved"). This phrase means suits in which "legal rights" rather than "equitable rights" were determined. *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 348 (1998); *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41 (1989). "Thus, whether a defendant is entitled to trial by jury depends on whether his suit will resolve legal or equitable rights." *Iantosca v. Benistar Admin. Servs.*, 843 F. Supp. 2d 148, 152 (D. Mass. 2012). "The determination hinges on 1) whether the action is, or is analogous to, an action that would have been brought in a court of law or equity and 2) whether the nature of the remedy sought is legal or equitable." *Id.* (citing *Tull v. United States*, 481 U.S. 412, 417-18 (1987)). "The second stage of the inquiry is more important than the first." *Id.* (citing *Tull*, 481 U.S. at 417-18). "[T]he right to a jury trial in the federal courts is to be determined

as a matter of federal law in diversity as well as other actions." *Simler v. Conner*, 372 U.S. 221, 222 (1963).[5]

The line between equitable and legal claims is well known. Under federal law, breach of contract claims are "essentially legal [in] nature." *Simler*, 372 U.S. at 223; *NACM-New England, Inc. v. Nat'l Ass'n of Credit Mgmt.*, 927 F.3d 1, 8 (1st Cir. 2019). A claim of failure to pay in accordance with the terms of a promissory note is a form of breach of contract and is therefore legal in nature as well. In *Health Care Mgmt. v. Magnolia-Tall Pines Realty LLC*, No. 1:25-cv-00020-SDN, 2025 U.S. Dist. LEXIS 114938 (D. Me. June 17, 2025), the district court wrote that "promissory notes 'are contracts to which basic principles of contract law apply.'" *Id.* at *4 (quoting *Briggs v. Briggs*, 1998 ME 120, ¶ 6, 711 A.2d 1286). Quantum meruit is variously described as a legal and an equitable remedy. *See Tourangeau v. Nappi Distribs.*, No. 2:20-cv-00012-JAW, 2023 U.S. Dist. LEXIS 123151, at *7 (D. Me. July 18, 2023); *Bowden v. Grindle*, 651 A.2d 347, 351 (Me. 1994) ("Quantum meruit was the common law count for work and labor in an action of *assumpsit*, and, thus, in Maine it is necessarily an issue triable of right by a jury") (citation omitted). Unjust enrichment is an equitable remedy. *Tourangeau*, 2023 U.S. Dist. LEXIS 123151, at *7; *Sunshine v. Brett*, 2014 ME 146, ¶ 22, n.11, 106 A.3d 1123 (Alexander, J. dissent) ("[U]njust enrichment is an equitable claim upon which there is no jury trial right"). As the same issues in the unjust enrichment count are likely to be tried before a jury on Counts Two through

---

[5]    The same principle applies under Maine law. *DiCentes v. Michaud*, 1998 ME 227, 719 A.3d 509 ("Because matters in equity were never triable of right to a jury, the right to a jury does not exist for claims sounding in equity"); *accord DesMarais v. Desjardins*, 664 A.2d 840, 844 (Me. 1995).

Four, it seems more efficient to submit the unjust enrichment claim to the jury for an advisory verdict. *Tourangeau*, 2023 U.S. Dist. LEXIS 123151, at *7-8.[6] Finally, the law usually does not allow the assertion of equitable claims, such as quantum meruit and unjust enrichment, if there is a valid contract that covers the same subject matter and defines the obligations of the parties. *See Guldseth v. Family Med. Assocs. LLC*, 45 F.4th 526, 541 (1st Cir. 2022) (applying Massachusetts law).

To this end, the Court preliminarily concludes there is a right to a jury trial on the breach of note and breach of contract claims (Counts Two and Three) and likely on the quantum meruit count. If U.S. Bank disagrees with this ruling, the Court ORDERS U.S. Bank to show cause within fourteen days of the date of this order on whether there is a right to a jury trial on the remaining counts. If U.S. Bank files a memorandum on these issues, Mr. Richmond may file a reply within seven days of U.S Bank's filing of their response.

## VII.   CONCLUSION

The Court concludes that U.S. Bank National Association, as trustee, on behalf of the holders of the Asset Backed Securities Corporation Home Equity Loan Trust, Series NC 2005-HE8, Asset Backed Pass-Through Certificates, Series NC 2005-HE8, failed to establish that it has standing to proceed with Count One, the foreclosure

---

[6]   Even though the law usually does not allow the assertion of equitable claims, such as unjust enrichment, if there is a valid contract that covers the same subject matter and defines the obligations of the parties, *see Guldseth v. Family Med. Assocs. LLC*, 45 F.4th 526, 541 (1st Cir. 2022) (applying Massachusetts law), here the parties contest whether there is a valid contract and therefore the issues may be presented to the jury in the alternative.

action, against Eric Richmond, and therefore the Court DISMISSES without prejudice Count One of the Plaintiff's Complaint.

Concluding preliminarily Eric Richmond has a right to a jury trial on Counts Two and Three of Plaintiff's Complaint, likely has a right to a jury trial on Court Four, and determining that the Court will use the jury as advisory on Count Five, the Court will proceed to jury trial on Counts Two through Five and ORDERS the Clerk's Office to place this case on the next available civil jury list.  If U.S. Bank maintains its position on the absence of the right to a jury trial in this case, the Court ORDERS U.S. Bank within fourteen days to show cause why there is no right to a jury trial as to Counts Two and Four of the Complaint.  The Court withholds deciding on the sanctions to be imposed on Mr. Richmond for his response to the order to show cause until the resolution of this case.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 27th day of October, 2025.