UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, ON BEHALF OF THE HOLDERS OF THE ASSET BACKED SECURITIES CORPORATION HOME EQUITY LOAN TRUST, SERIES NC 2005-HE8, ASSET BACKED PASS-THROUGH CERTIFICATES, SERIES NC 2005-HE8, <br><br> Plaintiff, <br><br> v. <br><br> ERIC RICHMOND, a/k/a ERIC H. RICHMOND <br> Defendant <br><br> and <br><br> CITIMORTGAGE, INC., f/k/a CITIGROUP MORTGAGE, INC. <br><br> Defaulted Party. | No. 2:21-cv-00208-JAW |

**ORDER GRANTING JUDGMENT**

As a sanction for a long history of obstructive and provocative conduct by a pro se defendant, the court grants judgment in favor of a bank against the borrower for his failure to pay under the terms of a promissory note, subject to the bank's supplying the final current figures owed on the note.

**I.    BACKGROUND**

On July 29, 2021, U.S. Bank National Association, as trustee, on behalf of the holders of the asset backed securities corporation home equity loan trust, series NC 2005-HE8, asset backed pass-through certificates, series NC 2005-HE8, (U.S. Bank) filed a complaint against Eric Richmond, alleging that Mr. Richmond borrowed

$198,000 from U.S. Bank's predecessor and had failed to make any payment on the promissory note since January 1, 2012. *Compl.* ¶¶ 30-38 (ECF No. 1). Acting pro se, Mr. Richmond has a long history of obstructive conduct, the latest being that he failed to file a Final Pretrial Memorandum and to appear at a Final Pretrial Conference, which had been scheduled to address jury selection and trial on January 5, 2026. *Order* (ECF No. 241); *Min. Entry* (ECF No. 252). When the Court issued an order to show cause as to why he should not be sanctioned for his failure to comply with court orders, Mr. Richmond filed an arrogant, abusive, nonresponsive screed, repeatedly accusing the Court of bias. *Req. for "Permission" to File Doc. Def. Is Required by Sua Sponte Ct. Order to File (This is Getting Stupid)*, Attach. 1, *Affirmation in Opp'n to O.S.C.* (ECF No. 257) (*Opp'n to O.S.C.*).

The premise of U.S. Bank's lawsuit was that Mr. Richmond had borrowed $198,000 from U.S. Bank's predecessor, New Century Mortgage Corporation, on August 9, 2005 secured by a mortgage to his residence at 66 Back Meadow Road, Nobleboro, Maine. *Compl.* ¶ 8. U.S. Bank's complaint alleged that Mr. Richmond last made a payment on the promissory note in January 2012 and, by the time U.S. Bank initiated the complaint on July 29, 2021, the amount Mr. Richmond owed U.S. Bank had risen to over $345,000 in principal, interest, and amounts held in escrow. *Compl.* ¶¶ 17, 37, 46, 49. The original complaint contained five counts: (1) foreclosure for breach of the mortgage, (2) breach of promissory note, (3) breach of contract, (4) unjust enrichment, and (5) quantum meruit. *Id.* at 1-14. By June 23, 2025, the amount Mr. Richmond owed U.S. Bank under the promissory note had ballooned to

$413,510.11.  *See [Proposed] Findings of Fact and Conclusions of Law and Resp. to Def.'s Post-Trial Br.* ¶ 2 (ECF No. 225) (*Pl.'s Post-Trial Br.*).

The underlying context of the lawsuit, however, was that the longer the suit remained unresolved, the longer Mr. Richmond was able to own and live at 66 Back Meadow Road without paying U.S. Bank the money he owed and with U.S. Bank paying essential expenses, such as taxes and sewer charges, to maintain its security interest in the property.

A.   **Eric Richmond's Conduct of the Underlying Lawsuit**

Over the ensuing years, Mr. Richmond engaged in a deliberate obstruction of the lawsuit.  He filed a litany of motions and six interlocutory appeals, each dismissed by the First Circuit Court of Appeals as presenting issues unreviewable on an interlocutory basis.  Mr. Richmond ignored eight orders to file an answer to the complaint and, in fact, never answered the complaint, although he consistently demonstrated his desire to contest the lawsuit.  Mr. Richmond's nearly two-year refusal to file an answer caused a delay in the issuance of a scheduling order, and finally, on June 5, 2023, the Court finally directed the Court Clerk to enter a general denial of the claims against him to allow this long-delayed case to proceed.  *Order Denying Def.'s Mot., Entering General Denial, and Imposing "*Cok*" Warning* at 3 (ECF No. 91).  Further, as a result of the offensive and combative language in Mr. Richmond's filings, including personal insults and vulgarity directed at opposing counsel, court personnel, and the presiding judge, on August 2, 2024, the Court after multiple warnings ordered Mr. Richmond restricted from making further filings in

this case without the Court's permission pursuant to *Cok v. Family Court of Rhode Island*, 985 F.2d 32 (1st Cir. 1993). *Order on Mot. for Sanctions and Mot. for Judicial Notice* at 10 (ECF No. 157) (Cok *Order*).

### B. The Trial on the Foreclosure Count

After innumerable delays caused by Mr. Richmond's obstructive behavior, the foreclosure count only went to trial before this Court on June 23, 2025, almost four years after U.S. Bank had filed suit. During trial, Mr. Richmond deliberately attempted to provoke this judge, constantly interrupting the Court and at one point calling the judge a "liar" in open court:

> MR. RICHMOND: I'll be blunt, you're flat out lying.
>
> THE COURT: You are saying that I am lying?
>
> MR. RICHMOND: You lied in two decisions I can cite right now.
>
> THE COURT: You're saying to my face that you're lying? You better think about what you just said, Mr. Richmond. You think about what you said to a judge.
>
> MR. RICHMOND: I will quote the cases.
>
> THE COURT: Mr. Richmond, you better sit down.

*Tr. of Proceedings*, 20:20-21:3 (ECF No. 211) (*Bench Trial Tr.*). Throughout the trial, consistent with his handling of the entire case, Mr. Richmond decided to attempt to provoke the Court, but the Court declined to be provoked and instead received the evidence and applied the law to U.S. Bank's foreclosure case.

Following the bench trial, the parties filed post-trial memoranda. Mr. Richmond filed a post-trial brief on July 21, 2025, *Post-Trial Br. for Def.* (ECF No.

219), and a correction on July 24, 2025. *Notice of Correction to Post-Trial Br.* (ECF No. 222). In its responsive memorandum, U.S. Bank alerted the Court to misquotations and miscitations in Mr. Richmond's brief. *Def.'s Post-Trial Br.* at 11-12. The Court then undertook the task of reviewing Mr. Richmond's brief to determine its accuracy. On August 6, 2025, the Court issued a seventeen-page order to show cause in which the Court detailed the numerous fabrications and misleading quotations and citations in his submission and ordered Mr. Richmond to show cause as to why his filing did not warrant further *Cok* restrictions. *O.S.C.* (ECF No. 226).

Mr. Richmond responded to the order to show cause on August 13, 2025. *Resp. to O.S.C.* (ECF No. 229). Mr. Richmond failed to respond to the Court's order to show cause and instead heaped abuse on the Court, writing that the Court had ignored his motions for years, accusing the Court of applying a "double standard," informing the Court that it had held a "sham trial," charging Plaintiff's counsel with a "sly trick," insisting that "THE ISSUES THE CITATIONS ADDRESS ARE STILL VALID AND CONTROLLING," arguing that the Court could sanction him only if it sanctioned Plaintiff's counsel, but failing to answer whether he had filed a memorandum replete with errors. *Id.* at 1-5 (capitalization in original). On August 13, 2025, the Court issued an order, concluding that Mr. Richmond's response was "unresponsive, largely irrelevant, provocative, and to the extent responsive, patently erroneous." *Order* (ECF No. 231). The Court left for another day the question of what sanction it should impose due to Mr. Richmond's "failure and refusal to squarely address the issues in its Order to Show Cause." *Id.*

Despite Mr. Richmond's continuous contemptuous and provocative behavior, the Court reached the merits of U.S. Bank's foreclosure count, and on October 27, 2025, the Court issued a forty-five-page decision, concluding that U.S. Bank had demonstrated its interest in the promissory note but not the mortgage, and dismissing without prejudice Count One, the foreclosure count, leaving the remaining counts for trial. *Findings of Fact and Conclusions of Law* at 1-45 (ECF No. 235) (*Foreclosure Order*). In its decision, the Court discussed the case of *Deutsche Bank Trust Company Americas v. Kendall*, RE-17-303, (Me. Super. Ct., Cum. Cnty., July 15, 2024, *aff'd in part and reversed in part*, Mem-25-54, 2025 Me. Unpub. LEXIS 55 (May 13, 2025). In its analysis of *Kendall*, the Court observed that the Maine Supreme Judicial Court had ruled that because the Superior Court had resolved the foreclosure case on standing, it should have dismissed the case without prejudice, rather than with prejudice. *Id.* 2025 Me. Unpub. LEXIS 55, at *1. Accordingly, consistent with that precedent, the Court dismissed the foreclosure count without prejudice. *Foreclosure Order* at 41.

Even though Mr. Richmond prevailed on the foreclosure count, he filed a motion for the Court to reconsider its decision in his favor. *Def.'s Mot. for Recons. (w/ Prejudice, Non-Binding Scope, & Order Answer) Pursuant to Local Rule 7(f) and Req. for Oral Argument* (ECF No. 246) (*Mot. for Recons.*). Among other things, he demanded without citation of authority that the Court dismiss the foreclosure count with prejudice. *Id.* at 2-3. On November 24, 2025, the Court rejected Mr. Richmond's

6

motion for reconsideration of its without prejudice dismissal as contrary to Maine law. *Order on Mot. for Recons.* (ECF No. 246).

### C.     Eric Richmond's Conduct on Appeal

Mr. Richmond filed six interlocutory appeals to the Court of Appeals for the First Circuit, *Notices of Appeal* (ECF Nos. 35, 40, 50, 97, 101, 141).  The Court of Appeals rejected each appeal.  *Js. of Ct. of Appeals* (ECF Nos. 61, 62, 63, 116, 117, 156); *Mandates* (ECF Nos. 64, 65, 66, 118, 119, 166).  On July 25, 2024, the Court of Appeals wrote:

> This is the sixth interlocutory appeal Richmond has noticed in the underlying matter, and this is the sixth time this court has dismissed for lack of finality.  Via judgments and orders entered in the prior appeals, this court repeatedly has warned Richmond regarding frivolous and vexatious litigation practices.  For example, in its orders entered March 21, 2024, in Appeal Nos. 23-1573 and 23-1574, this court reiterated its "**final warning**" to Richmond as follows: "In the event Richmond notices another appeal in the underlying matter over which this court does not have jurisdiction, the court may have no choice but to impose monetary sanctions and/or filing restrictions."
>
> Despite this warning, Richmond filed this sixth frivolous interlocutory appeal just 13 days later.  Thus, Richmond has not heeded this court's "last warning against the taking of further frivolous appeals."  Further abuses of this sort will not be tolerated, and, having provided ample warning, we now will take those steps necessary to curb Richmond's vexatious conduct.

*J. of Ct. of Appeals* at 2 (ECF No. 156).  In view of Mr. Richmond's abusive litigation conduct, the Court of Appeals observed that if he filed another interlocutory appeal, the district court need not stay the proceedings and it authorized U.S. Bank to file a separate motion seeking reasonable fees and costs.  *Id.* at 2-3.

### D. Events Leading to the December 5, 2025 Order to Show Cause

After issuing an order on the foreclosure count in Mr. Richmond's favor, the Court turned to the remaining four counts. At the end of the bench trial, Attorney Longoria had asserted that Mr. Richmond had no right to a jury trial on the remaining four counts of the complaint. *Bench Trial Tr.* at 16:3-12. Before the case could be set for trial on the remaining counts, the Court needed to resolve whether it would be a jury or bench trial and on what counts. The Court discussed this issue in its order on the foreclosure count, preliminarily determining that Mr. Richmond had the right to a jury trial on Count Two, the promissory note count, Count Three, the breach of contract count, and likely on Count Four, the quantum meruit count, and did not have a right to a jury trial on Count Five, the unjust enrichment count. *Foreclosure Order* at 41-44. If U.S. Bank disagreed with the Court's jury trial determination, the Court ordered U.S. Bank to object within fourteen days of the October 27, 2025 order as to whether there is a right to a jury trial on the remaining counts. *Id.* at 44.

On November 12, 2025, once the fourteen-day objection period expired, the Court set this case for jury trial in the January term of court with jury selection on January 5, 2026. *Trial List* (ECF No. 240). In anticipation of the January jury trial, the Court set November 21, 2025 as the date for any motions to continue or requests for protection, December 1, 2025 as the deadline for filing a final pretrial memorandum, and December 5, 2025 at 1:00 p.m. as the date and time of a final pretrial conference. *Order*.

Within Mr. Richmond's November 10, 2025 motion for reconsideration, Mr. Richmond requested that he be allowed to file an answer to Counts Two through Five of the complaint within twenty-one days of the court order on his motion. *Mot. for Recons.* at 5-6. On November 24, 2025, when the Court issued an order on the motion for reconsideration, it granted Mr. Richmond's motion for leave to file late answer. *Order on Mot. for Recons.* at 10-12. The Court did not allow Mr. Richmond to assert any affirmative defenses and rejected his contention that he be allowed to file his answer "de novo," warning him that his answer "may not delay the resolution of this case" any further, and clarifying he is not entitled to a scheduling order or discovery. *Id.* The Court set December 8, 2025 as the deadline for Mr. Richmond to file an answer. *Id.* at 12.

On December 1, 2025, U.S. Bank filed a final pretrial memorandum. *Pl.'s Pretrial Mem.* (ECF No. 251). Mr. Richmond failed to file a final pretrial memorandum. On December 5, 2025, the Court held a final pretrial conference in courtroom two of the Gignoux Courthouse. Attorney Longoria appeared and Mr. Richmond did not. Finally, Mr. Richmond failed to file the answer he had asked permission to file.

### E. The Court's December 5, 2025 Order to Show Cause and Eric Richmond's December 15, 2025 Opposition

As a result of Mr. Richmond's failure to appear at the final pretrial conference, on December 5, 2025, the Court ordered Mr. Richmond to show cause by December 12, 2025 as to why judgment should not be awarded to U.S. Bank as a sanction for his failure to file a pretrial memorandum and failure to appear at the final pretrial

conference. *O.S.C.* at 1-2 (ECF No. 255). Mr. Richmond failed to file a timely response but did file a response on December 15, 2025. *Opp'n to O.S.C.* at 1-4.

Mr. Richmond's response follows his pattern of excusing his own obstructive and recalcitrant behavior and accusing the Court of misbehavior. Mr. Richmond's response is again stunningly arrogant. Mr. Richmond first complains that he did not have sufficient time to respond to the order to show cause, which Mr. Richmond then denigrates the Court by snidely remarking that the "Court is well aware, <u>if it has bothered to read all of Movant-Defendant's motion papers</u>." *Id.* at 1 (emphasis supplied). Mr. Richmond then makes the brazen allegation that the Court cannot hold a hearing on the remaining counts, because he has not filed an answer, *id.* at 2, despite the fact the Court had allowed him to file a late answer due by December 8, 2025, and he had failed to do so. Mr. Richmond accused the Court of a "rush to judgment" on a case that had been pending for over four years. *Id.* In his response, Mr. Richmond accuses the Court of "**BIAS**" eleven times in bold capital letters in his diatribe. *Id.* at 1-3. Although filled with recrimination and accusation, Mr. Richmond never responded to the order to show cause by explaining why he failed to file a final pretrial memorandum and why he failed to appear at the final pretrial conference.

## II.  DISCUSSION

In *Vivaldi Servicios de Seguridad, Inc. v. Maiso Grp., Corp.*, 93 F.4th 27 (1st Cir. 2024), the First Circuit recently described the circumstances under which a trial court may dismiss a claim because of a party's failure to attend a final pretrial conference. The First Circuit noted that in that case, plaintiff's counsel had

inexcusably failed to appear at the final pretrial conference, and the district judge had dismissed the case. *Id.* at 30. When the plaintiff moved for clarification, the district court denied the motion on the ground that there was "nothing to clarify." *Id.*

As there was no evidence in *Vivaldi* that there was any history of noncompliance, the First Circuit concluded that even though the district court was entitled to impose some type of sanction for the plaintiff's noncompliance, a dismissal for a single failure to appear at a hearing without a "pattern of contumacious conduct" constitutes an abuse of discretion. *Id.* at 31. The *Vivaldi* Court ruled that a district court should have considered whether it should instead impose "a panoply of alternative lesser sanctions." *Id.* at 32. The First Circuit has offered a "non-exclusive list of substantive factors" a trial court should consider before imposing a sanction, including "the severity of the violation," "the deliberateness vel non of the misconduct, mitigating excuses, prejudice to the other side and to the operations of the court, and the adequacy of lesser sanctions." *U.S. ex rel. Nargol v. DePuy Orthopaedics, Inc.*, 69 F.4th 1, 11 (1st Cir. 2023) (quoting *Malot v. Dorado Beach Cottages Assocs.*, 478 F.3d 40, 44 (1st Cir. 2007) (internal quotation marks omitted)).

In general, the same analysis applies to the issuance of a default judgment as a sanction against a defendant. The First Circuit described a default judgment as a "drastic sanction" but has stated that it "provides a useful remedy," where "a litigant is confronted by an obstructionist adversary." *AngioDynamics, Inc. v. Biolitec AG*, 780 F.3d 429, 436 (1st Cir. 2015) (quoting *Crispin-Taveras v. Municipality of Carolina*, 647 F.3d 1, 7 (1st Cir. 2011) (internal quotation marks omitted).

11

Here, Mr. Richmond has engaged in an astonishing pattern of contumacious, arrogant, and obstructionist conduct, ranging from his stubborn refusal to file an answer to the complaint, his use of vulgar and inexcusable language in court filings, his repeated frivolous interlocutory appeals, culminating in his failure to comply with the basic orders of this Court necessary to prepare the case for jury trial. Because of Mr. Richmond's conduct, the Court could not go forward with jury selection and trial on January 5, 2025. Although it has received a pretrial memorandum from U.S. Bank, it has still not received a pretrial memorandum from Mr. Richmond. It does not know the witnesses he would call, the exhibits he would propose to introduce, or the factual and legal issues in dispute from his perspective. It has not been able to issue a final pretrial order, establishing deadlines for proposed jury instructions, a verdict form, motions in limine, jury voir dire, and other essential matters, and it has no assurance that if the trial did not proceed in January 2026, Mr. Richmond would cooperate with the court process and the case would be jury-ready for the February term, or for that matter for any term.

The Court notes one further matter. To the Court's knowledge, Mr. Richmond has no legitimate defense to Count Two – the promissory note count – in the Plaintiff's complaint. As the Court explained in its October 27, 2025 findings of fact and conclusions of law, the legal principles applicable to mortgages are not the same as the legal principles applicable to promissory notes. *Foreclosure Order* at 28-41. To have standing in a foreclosure action under Maine law, the mortgagee must prove its interest in both a promissory note and a mortgage. *Bank of Am., N.A. v. Greenleaf*,

2014 ME 89, ¶ 9, 96 A.3d 700.  When U.S. Bank failed to demonstrate its interest in the mortgage, the Court concluded that it could not proceed with its foreclosure count. *Foreclosure Order* at 41.

However, before it reached the validity of U.S. Bank's interest in the mortgage, the Court considered whether U.S. Bank had a legal interest in the promissory note. *Id.* at 28-29.  As the Court observed in its foreclosure order, U.S. Bank actually possessed the promissory note, which was endorsed in blank.  *Id.*  In fact, during the bench trial on the foreclosure count, U.S. Bank produced the original note, and the Court reviewed the note to determine its authenticity and accuracy and that it had been endorsed in blank.  *Bench Trial Tr.* at 32:8-33:25; *Pl.'s Trial Ex. 3* (*Promissory Note*).  In its foreclosure decision, the Court concluded that U.S. Bank had "proved its status as holder of the note and therefore enjoys the right to enforce the debt." *Id.* at 29 (quoting *Greenleaf*, 2014 ME 89, ¶ 11, 96 A.3d 700 (citations omitted)). Throughout this contentious case, Mr. Richmond has never suggested that he made a payment on the promissory note after January 2012, and it seems inevitable that, if this case went to jury trial, he would be found to have breached the terms of the promissory note and would be found liable to U.S. Bank for the full amount it has demanded.  Thus, if Mr. Richmond has a viable defense to Count Two – the promissory note count – the Court does not know what it is or could be.

### III.  CONCLUSION

Based on Eric Richmond's long history of contumacious conduct as only partially recited in this order, the Court ORDERS pursuant to its authority under

Federal Rule of Civil Procedure 37 and its inherent authority that JUDGMENT shall issue in favor of Plaintiff U.S. Bank National Association, as trustee, on behalf of the holders of the asset backed securities corporation home equity loan trust, series NC 2005-HE8, asset backed pass-through certificates, series NC 2005-HES, against Eric Richmond, a/k/a Eric H. Richmond, on Count Two of Plaintiff's complaint – promissory note.[1]  As a consequence of this order, the Court concludes that Mr. Richmond breached the terms of the promissory note dated August 9, 2005 by failing to make any payment on that note after January 2012, and is therefore in breach of its terms.  Before entering a final judgment, the Court ORDERS the Plaintiff to provide an accounting to the Court of the amounts due and owing under the promissory note and any additional fees, escrow balances, and other properly assigned costs within one week of the date of this order, together with a proposed judgment to issue in its favor and against Eric Richmond.  As the Plaintiff is not entitled to recover on more than one theory, the Court will dismiss Counts Three through Five without prejudice.

SO ORDERED.

>	/s/ John A. Woodcock, Jr.
> JOHN A. WOODCOCK, JR.
> UNITED STATES DISTRICT JUDGE

Dated this 22nd day of December, 2025

---

[1] The Court held in abeyance the sanction it would impose on Mr. Richmond given his submission of hallucinogenic and erroneous legal citations.  *See Order* (ECF No. 231).  As the issuance of an order of default judgment is a drastic sanction, the sanction the Court would have imposed on Mr. Richmond for his factitious and miscitations is subsumed by the sanction in this order.