UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

U.S. BANK NATIONAL                    )
ASSOCIATION, AS TRUSTEE,              )
ON BEHALF OF THE HOLDERS             )
OF THE ASSET BACKED                  )
SECURITIES CORPORATION               )
HOME EQUITY LOAN TRUST,              )
SERIES NC 2005-HE8, ASSET            )
BACKED PASS-THROUGH                  )
CERTIFICATES, SERIES                 )
NC 2005-HE8,                         )
                                     )
          Plaintiff,                 )
                                     )
     v.                              )          No. 2:21-cv-00208-JAW
                                     )
ERIC RICHMOND, a/k/a ERIC H.         )
RICHMOND,                            )
                                     )
          Defendant,                 )
                                     )
     and                             )
                                     )
CITIMORTGAGE, INC., f/k/a            )
CITIGROUP MORTGAGE, INC.,            )
                                     )
          Defaulted Party.           )

**ORDER DENYING MOTION FOR RECONSIDERATION, MOTION TO
STAY, AND MOTION TO DISQUALIFY**

The Court denies a defendant's motion for reconsideration, motion to stay, and

motion to disqualify this judge.

## I.    BACKGROUND[1]

On July 29, 2021, U.S. Bank National Association, as Trustee on Behalf of the Holders of the Asset Backed Securities Corporation Home Equity Loan Trust Series NC 2005-HE8, Asset Back Pass-Through Certificates, Series NC 2005-HE8 (U.S. Bank) filed a foreclosure complaint against Eric Richmond, claiming that Mr. Richmond had borrowed and had failed to pay U.S. Bank in accordance with the terms of a promissory note dated August 9, 2005, secured by a mortgage on 66 Back Meadow Road, Nobleboro, Maine, in favor of the bank, his last payment having been on November 12, 2014.  *Compl.* (ECF No. 1); *Aff. of Michele Simon Amount Due on the Note* (ECF No. 262) (*Simon Aff.*).  As of July 29, 2021, U.S. Bank claimed that the amount owed by Mr. Richmond under the note was $345,067.69.  *Compl.* ¶ 2.  In addition to its foreclosure count, U.S. Bank asserted four counts: (1) breach of note, (2) breach of contract, money had and received, (3) quantum meruit, and (4) unjust enrichment.  *Id.* ¶¶ 30-60.  Eric Richmond, who has represented himself throughout the more than four years of litigation, entered his appearance on October 5, 2021.  *Notice of Pro Se Appearance* (ECF No. 12).

There ensued an extraordinary saga of pro se motions, accusations, defiance of court orders, and delay caused by Mr. Richmond's litigation tactics, including repeated frivolous appeals to the Court of Appeals for the First Circuit.  The obstructionist and rude behavior of Mr. Richmond is well documented in the docket

---

[1]    The Court has issued countless orders in this case, which provide a roadmap for Mr. Richmond's deliberately obstructive and contumacious behavior as a pro se litigant.  This order is synoptic, but the history of this case and Mr. Richmond's misconduct are well documented.

of this case, now containing 279 entries, and resulted in the issuance of a *Cok*[2] order on August 2, 2024. *Order on Mot. for Sanctions and Mot. for Judicial Notice* at 1-10 (ECF No. 157).

Finally, on June 23, 2025, the Court held an evidentiary hearing on the foreclosure count alone, having concluded that the parties did not have a right to a jury trial on the foreclosure count. *See Reagan v. U.S. Bank*, No. 2:14-cv-00059-GZS, 2014 U.S. Dist. LEXIS 128447, *14 (D. Me. Sept. 12, 2014); *Kennebec Fed. S&L Ass'n v. Kueter*, 1997 ME 123, ¶¶ 4-5, 695 A.2d 1201; *United States Bank Tr. v. Menezis*, No. 2:17-cv-66-GZS, 2017 U.S. Dist. LEXIS 158386, at *2 n.2 (D. Me. Sept. 27, 2017). Later, the Court concluded that the parties had a right to a jury trial on the breach of contract and breach of promissory note claims and likely on the quantum meruit claims. *Findings of Fact and Conclusions of Law* at 1-2, 41-44 (ECF No. 235). On October 27, 2025, the Court issued an order, finding in favor of Mr. Richmond on the foreclosure count because in the Court's view, U.S. Bank failed to establish that it had standing to proceed with the foreclosure count. *Id.* at 1-45.

On November 12, 2025, the Court scheduled this case for a jury trial to commence on January 5, 2026, *Trial List* (ECF No. 240), and the Court issued a standard pretrial order, scheduling a final pretrial conference for December 5, 2025 at 1:00 p.m., final pretrial memoranda to be filed by December 1, 2025, and any motions to continue or for protection from trial to be filed by November 21, 2025. *Order* (ECF No. 241). On December 1, 2025, U.S. Bank filed a final pretrial

---

[2]     *Cok v. Family Ct.*, 985 F.2d 32 (1st Cir. 1993).

memorandum. *Pl.'s Pretrial Mem.* (ECF No. 251). Mr. Richmond failed to file a final pretrial memorandum. The Court held a final pretrial conference, as scheduled, on December 5, 2025. *Min. Entry* (ECF No. 252). Attorney Reneau Longoria appeared on behalf of U.S. Bank, but Mr. Richmond failed to appear. *Id.*

On December 5, 2025, the Court issued an order to show cause, requiring Mr. Richmond to "respond to this Order and Show Cause as to why the Court should not award judgment in favor of U.S. Bank National Association against him under Count Two, breach of the terms of a promissory note, in an amount to be determined by the Court for his failure to comply with the orders of this Court by failing to file a Pretrial Memorandum and failing to appear at the scheduled Final Pretrial Conference." *O.S.C.* at 2 (ECF No. 255). Mr. Richmond filed a response on December 15, 2025. *Req. for "Permission" to File Doc. Def. Is Required to Sua Sponte Ct. Order to File (This is Getting Stupid)*, Attach. 1, *Affirmation in Opp'n to O.S.C.* (ECF No. 257). In its December 22, 2025 order granting judgment, the Court characterized Mr. Richmond's response as "an arrogant, abusive, nonresponsive screed, repeatedly accusing the Court of bias." *Order Granting J.* at 2 (ECF No. 260). On December 22, 2025, the Court granted judgment in favor of U.S. Bank on the promissory note count, ordering U.S. Bank to provide an accounting of the amounts owed under the terms of the promissory note. *Id.* at 13-14.

On December 29, 2025, Mr. Richmond filed a motion to reconsider the default order, for a stay of the proceedings, and for disqualification of this Judge. *Def.'s Mot. to Recons. Default Order Pursuant to Local R. 7(f), for Stay of Proceedings, and for*

*Disqualification of the Ct. Pursuant to 28 U.S.C. § 455(a) and (b)* (ECF No. 261) (*Def.'s Mot.*).  U.S. Bank objected on February 6, 2026.  *Pl.'s Resp. in Opp'n to ECF No. 265 Def.'s Mot. to Recons. Default Order Pursuant to Local R. 7(f), for Stay of Proceedings, and for Disqualification of the Ct. Pursuant to 28 U.S.C. § 455(a) and (b)* (*Pl.'s Opp'n*). Mr. Richmond replied on February 26, 2026.  *Def.'s Reply Mem. in Support of Mot. for Recons. Pursuant to Local R. 7(f), Mot. to Stay, Mot. to Disqualify* (ECF No. 280) (*Def.'s Reply*).

## II.    THE PARTIES' POSITIONS

### A.    Eric Richmond's Motions

In his motion to reconsider, Mr. Richmond first asserts that the U.S. Bank complaint fails to state a claim on Count Two, the promissory note count.  *Def.'s Mot.* at 2.  Mr. Richmond claims he never received a notice of default as required under the provisions of the note and that U.S. Bank should have sent a notice of default by a certificate of mailing.  *Id.* at 3-4.  Mr. Richmond also maintains that U.S. Bank failed to produce a copy of the original note.  *Id.* at 4.  Mr. Richmond contends that U.S. Bank erred in claiming that the note was executed under seal pursuant to 14 M.R.S. § 751 and therefore the twenty-year statute of limitations claimed by U.S. Bank is inapplicable.  *Id.* at 7.  Mr. Richmond repeats his objection to the Court ordering him to file an answer to the complaint.  *Id.* at 7-8.

Mr. Richmond argues that the Court prejudged this case and favored U.S. Bank over his interests.  *Id.* at 9-11.  Mr. Richmond also objected to the Court's application of sanctions under Federal Rule of Civil Procedure 37, arguing that the

Court misapplied the rule. *Id.* at 11-12. Specifically, Mr. Richmond says the Court misapplied *Vivaldi Servicios de Seguridad, Inc. v. Maiso Group, Corporation*, 93 F.4th 27 (1st Cir. 2024) because it made no specific findings that his misconduct had been extreme or contumacious, made no finding of prejudice to the Plaintiff, and did not consider lesser sanctions. *Id.* at 13-15. Mr. Richmond contends that the Court reacted inappropriately when he called this Judge a liar in open court. *Id.* at 18-19. Mr. Richmond then explains his own view of his litigation conduct. *Id.* at 19-24. Finally, Mr. Richmond then describes why he believes this Judge should recuse himself, making various accusations against this Judge. *Id.* at 26-36.

### B.   U.S. Bank's Opposition

Regarding Mr. Richmond's multiple objections about whether U.S. Bank could have proved its case, U.S. Bank points out that the jury trial, which had been scheduled for January 5, 2026, was the proper forum to raise these issues, and it was Mr. Richmond who had scuttled the jury trial by failing to comply with the Court's pretrial orders. *Pl.'s Opp'n* at 4. U.S. Bank disputes the validity of Mr. Richmond's objections to U.S. Bank's right to proceed on the promissory note. *Id.* at 4-10. U.S. Bank also disputes Mr. Richmond's characterizations of this Judge as biased and in error. *Id.* at 10-13. U.S. Bank further contends that the Court correctly applied Rule 37 as a sanction. *Id.* at 13-16. Finally, U.S. Bank responds to and rejects Mr. Richmond's demand that this Judge recuse himself. *Id.* at 16-18.

### C.    Eric Richmond's Reply

In the first part of his reply, Mr. Richmond reiterates his contentions about the merits of U.S. Bank's claim and reasserts that it could not prove its case, *Def.'s Reply* at 2, that the Court erred in filing an answer for him, *id.*, and that the default sanction was disproportionate to his conduct.  *Id.* at 3.

## III.   LEGAL STANDARDS

### A.    Motion for Reconsideration

Mr. Richmond moves for reconsideration pursuant to District of Maine Local Rule 7(f)(1), which provides:

> A motion to reconsider an interlocutory order of the Court, meaning a motion other than one governed by Federal Rule of Civil Procedure 59 or 60, must demonstrate that the order was based on a manifest error of fact or law.

D. ME. LOC. R. 7(f)(1).  "Reconsideration is not an opportunity to revisit the party's case and to 'reargue[e] theories previously advanced and rejected.'" *Baines v. Dunlap*, No. 1:19-cv-00509-LEW, 2020 U.S. Dist. LEXIS 122020, at *1-2 (D. Me. July 13, 2020) (quoting *Palmer v. Champion Mortg.*, 465 F.3d 24, 29-30 (1st Cir. 2006)).  "[The moving party] can only succeed 'if the court has patently misunderstood a party . . . or has made an error not of reasoning but apprehension.'"  *Id.* at *2 (quoting *Ruiz Rivera v. Pfizer Pharms., LLC*, 521 F.3d 76, 82 (1st Cir. 2008) (further quotations and citations omitted)

### B.    Motion to Stay

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and

effort for itself, for counsel, and for litigants." *Am. Sales Co., LLC v. Warner Chilcott Pub. Ltd.*, C.A. No. 13-347 S, 2013 U.S. Dist. LEXIS 110436, at *3 (D.R.I. Aug. 6, 2013) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936)).  The party seeking a stay "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else."  *Id.* (quoting *Landis*, 299 U.S. at 255).  Whether to stay litigation pending resolution of parallel proceedings is committed to this Court's "sound discretion."  *Metrom Rail, LLC v. Mass. Bay Transp. Auth.*, No. 25-cv-11446-ADB, 2025 U.S. Dist. LEXIS 252856, at *17 (D. Mass. Dec. 8, 2025) (citation omitted).

## C.     Motion to Recuse

Mr. Richmond is proceeding under 28 U.S.C. § 455(a) and (b)(1), *Def.'s Mot.* at 1 & 26, which provides in pertinent part:

> **(a)** Any . . . judge . . . of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
>
> **(b)** He shall also disqualify himself in the following circumstances:
>
> > (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding.

Turning first to the general standard of § 455(a), this statute requires judicial recusal if a reasonable person, knowing all the facts, would harbor doubts concerning the judge's impartiality.  *Rodriguez-Vilanova v. Stryker Corp.*, 987 F. Supp. 2d 153, 154 (D.P.R. 2013) (citing *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 860-61 (1988)).  This section implicates competing policy interests.  On the one hand, "courts must not only be, but must seem to be, free of bias or prejudice."  *In re United*

8

*States*, 158 F.3d 26, 30 (1st Cir. 1998) (citing *In re United States*, 666 F.2d 690, 694 (1st Cir. 1981)).  "On the other hand, recusal on demand would put too large a club in the hands of litigants and lawyers, enabling them to veto the assignment of judges for no good reason."  *Id.*

The First Circuit Court of Appeals has expressed that close questions should be resolved in favor of disqualification.  *Id.* at 30.  Section 455(a)'s legislative history indicates Congress amended it in order to shift the balance from one imposing on judges a "duty to sit" to one that resolves close questions in favor of disqualification.  *See* H.R. REP. NO. 93-1453, at 6355 (1974), *reprinted in* 1974 U.S.C.C.A.N. 6351, 6355.  This legislative history also indicates, however, that Congress did not intend for the provision to be used by "those who would question [the judge's] impartiality . . . seeking to avoid the consequences of [the judge's] expected adverse decision."  *Id.*  Rather, "[n]othing in this proposed legislation should be read to warrant the transformation of a litigant's fear that a judge may decide a question against him into a 'reasonable fear' that the judge will not be impartial."  *Id.*  Litigants are "not entitled to judges of their own choice."  *Id.*

In *Rodriguez-Vilanova*, the district court quoted the Seventh Circuit:

> A thoughtful observer understands that putting disqualification in the hands of a party, whose real fear may be that the judge will *apply* rather than disregard the law, could introduce a bias into adjudication. Thus the search is for a risk substantially out of the ordinary.

987 F. Supp. 2d at 155 (quoting *In re Mason*, 916 F.2d 384, 386 (7th Cir. 1990) (emphasis in original).

9

In addition to the general standard, § 455 creates two separate standards, personal bias or prejudice and personal knowledge of disputed evidentiary facts. 28 U.S.C. § 455(b)(1). Regarding the bias and prejudice language of § 455(b)(1), the First Circuit has focused on the "impartiality language of § 455(a) because it covers the same ground and reaches even further." *In re Martinez-Catala.* 129 F.3d 213, 220 (1st Cir. 1997). The First Circuit explained that "[§] 455(a) is in no way limited to 'personal' bias or prejudice 'concerning a party' and--unlike . . . § 455(b)(1)--does not require that bias or prejudice *in fact* be established." *Id.* (quoting *United States v. Chantal*, 902 F.2d 1018, 1023 (1st Cir. 1990)) (emphasis in original).

In general, courts have held that § 455(b)(1)'s reference to "personal knowledge" refers to a judge having prior or contemporaneous knowledge of disputed facts from a source other than the case itself that is not revealed to the parties but is considered by the judge in making the decision. *See Ark. Teacher Ret. Sys. v. State St. Bank & Tr. Co.*, 404 F. Supp. 3d 486, 517 (D. Mass. 2018) (§ 455(b)(1) applies, for example, where a judge receives information that does not enter into the record and the reliability of that information may not be tested through the adversary process).

Finally, in *United States v. Medoff*, 159 F.4th 107 (1st Cir. 2025), the First Circuit observed that "as the Supreme Court explained in *Liteky*, 'judicial rulings alone almost never constitute a valid basis for a bias or partiality motion.'" *Id.* at 123 (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)). "Almost invariably, [such rulings] are proper grounds for appeal, not for recusal." *Id.* (quoting *Liteky*, 510 U.S. at 555).

10

## IV.  DISCUSSION

### A.  Reconsideration

#### 1.  The Motion to Dismiss is Untimely

Mr. Richmond's major complaint about the Court's December 22, 2025 order granting judgment on Count Two of U.S. Bank's Complaint is that U.S. Bank's Count Two does not state a claim upon which relief may be granted, the standard for dismissal under Federal Rule of Civil Procedure 12(b)(6). *Def.'s Mot.* at 2 ("Even accepting all well-pleaded allegations as true under default, Plaintiff's Complaint fails to state a claim on Count Two because Plaintiff's own exhibits contradict and disprove an essential element of the claim").

Mr. Richmond's motion to dismiss is extraordinarily untimely. Rule 12 requires that a Rule 12(b)(6) motion be filed "before pleading if a responsive pleading is allowed." FED. R. CIV. P. 12(b)(6). Mr. Richmond was served with the summons and complaint on September 13, 2021. *Summons* (ECF No. 6). Under Rule 12(a), his answer was due twenty-one days after service of the summons and complaint or by October 5, 2021. FED. R. CIV. P. 12(a)(1)(A)(i). But Mr. Richmond deliberately refused to file an answer to the complaint, even in the face of multiple orders requiring him to do so. *See Order on Mot. to Dismiss and Order to Answer Compl.* (ECF No. 88).

All defenses that are not advanced by motion, including those involving affirmative matter, are to be presented in the responsive pleading. 5B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & A. BENJAMIN SPENCER, FED. PRACTICE AND PROCEDURE § 1347 (4th ed. 2025). Here, Mr. Richmond could have, but did not raise the issues

11

he is now raising in a Rule 12(b)(6) motion.  In fact, on January 18, 2023, Mr. Richmond filed a Rule 12(b)(6) motion but restricted his motion to Count One, the foreclosure count.  *Def.'s Mot. to Dismiss Compl. for Failure [to] State a Cl. Upon Which Relief Can Be Granted Pursuant to FRCP 12(b)6 and to Dismiss Compl. for Failure to Join Necessary Parties Pursuant to FRCP 12(b)7 and Judicial Notice of Facts Not Subject to Reasonable Dispute Pursuant to Fed. Rs. of Evid. 201 and Vacatur of Dismissal of Mot. to Dismiss Pursuant to FRCP 60(d)3* (ECF No. 78).  Mr. Richmond has waited over four years to file a motion that by rule should have been filed in the fall of 2021.  It is untimely.

### 2.    Eric Richmond's Waiver

In his motion to dismiss, Mr. Richmond attempts to raise whether if the case had gone to trial, U.S. Bank would have been able to prove its lawsuit on Count Two, the promissory note count.  *Def.'s Mot.* at 2-4.  Mr. Richmond misses the point.  Mr. Richmond had the right to a jury trial, which by his persistent misconduct, he squandered.  He may not now raise as a defense to the sanctions order what he would have raised at trial.

As the history of this case confirms, the Court was prepared to proceed on January 5, 2026 with jury selection and an immediate jury trial on U.S. Bank's Count Two, the breach of promissory note count, as well as the other jury available counts.  On November 12, 2025, the Court placed this case on the trial list for January 5, 2026, *Trial List*, scheduled a final pretrial conference for December 5, 2025, *Order*, and ordered the parties to file final pretrial memoranda by December 1, 2025.  *Id.*  On

12

December 1, 2025, U.S. Bank filed a final pretrial memorandum; Mr. Richmond ignored the order. *Pl.'s Pretrial Mem.* The Court held a final pretrial conference on December 5, 2025. U.S. Bank appeared; Mr. Richmond failed to show. *Min. Entry.*

On December 5, 2025, the Court issued an order to show cause, which stated in part:

> Accordingly, the Court ORDERS Eric Richmond to respond to this Order and Show Cause as to why the Court should not award judgment in favor of U.S. Bank National Association against him under Count Two, breach of the terms of the promissory note, in an amount to be determined by the Court for his failure to comply with the orders of this Court by failing to file a Pretrial memorandum and failing to appear at the scheduled Final Pretrial Conference.

*O.S.C.* at 2.

On December 15, 2025, Mr. Richmond filed a response to the Order to Show Cause and, once again, demonstrated his utter contempt for this Court, using inappropriate language, repeatedly accusing the Court of bias, and failing to address his failure to file a pretrial memorandum and attend the scheduled pretrial conference. *Affirmation in Opp'n to Order to Show Cause* (ECF No. 259). The Court described Mr. Richmond's misconduct throughout this case, including his December 15, 2025 response to the Order to Show Cause, in its December 22, 2025 Order Granting Judgment. *Order Granting J.* at 1-14 (ECF No. 260). If Mr. Richmond wished to posit a meritorious defense to U.S. Bank's Count Two, he should have mentioned those defenses in his response to the Court's Order to Show Cause, not after the Court issued its sanction. By his conduct, Mr. Richmond waived the right to defend this civil action.

### 3. Eric Richmond's Defenses to Count Two

Count Two of U.S. Bank's July 29, 2021 complaint alleged a breach of note. *Compl.* ¶¶ 30-38. U.S. Bank claimed that Mr. Richmond executed a promissory note under seal to New Century Mortgage Corporation in the amount of $198,000, *id.* ¶ 31, and it attached as Exhibit B to the complaint a copy of the promissory note. *Id.* Attach. 2, *Adjustable Rate Note* (Aug. 9, 2005). U.S. Bank alleged that Mr. Richmond was then in default on the note for failure to properly tender the February 1, 2012 payment and all subsequent payments. *Id.* ¶ 32. U.S. Bank further alleged that it was the proper holder of the note and was entitled to enforce its terms, *id.* ¶ 33, and that Mr. Richmond was in knowing, willful, and continuing breach of its terms. *Id.* ¶ 35. U.S. Bank then alleged that Mr. Richmond owed it a grand total of $345,055.14 as of July 29, 2021. *Id.* ¶ 37.

In Mr. Richmond's motion for reconsideration, he claims that U.S. Bank failed to comply with the notice of default requirement of the promissory note and therefore, its claim for payment of the promissory note is defective.[3] *Def.'s Mot.* at 3-4. In the context of this case, Mr. Richmond would not have been able to raise these issues at

---

[3] As U.S. Bank points out, Mr. Richmond's motion contains miscitations. *Def.'s Mot.* at 4. In his motion, he cites *Hendges v. Bank of America, N.A.*, 408 F. Supp. 2d 1127 (D. Haw. 2006). *Def.'s Mot.* at 4. The case does not exist at this citation, and the Court could not locate such a case. Mr. Richmond cites *Foman v. Davis*, 371 U.S. 178 (1962), a Supreme Court case, for the proposition that "where a complaint's exhibits contradict its allegations, the exhibits control." *Def.'s Mot.* at 4. Mr. Richmond did not provide a pincite, and the Court could not locate this proposition in *Foman*. Also, although *Tellabs, Incorporated v. Makor Issues & Rights, Limited.*, 551 U.S. 308 (2007) exists, Mr. Richmond cites it for the same proposition that he cited *Foman*. But this proposition does not appear at page 322, the pincite Mr. Richmond supplied.

The Court previously warned Mr. Richmond against providing miscitations and misquotations to the Court. *O.S.C.* (ECF No. 226). However, as with so many of the Court's other orders to Mr. Richmond, he has ignored the Court's order.

trial.  Under the law, "in the context of a suit on a promissory note, the lender can meet its prima facie burden by introducing the 'promissory note and a certificate of indebtedness signed under penalty of perjury by a loan analyst.'"  *United States v. Grant*, No. CV-10-190-B-W, 2010 U.S. Dist. LEXIS 78372, at *2-3 (D. Me. Aug. 3, 2010) (quoting *United States v. Strohmeyer*, No. CV-09-479-B-W, 2010 U.S. Dist. LEXIS 19195, at *4 (D. Me. Mar. 2, 2010)).  "Once such a prima facie case is established, defendant has the burden of proving the nonexistence, extinguishment or variance in payment of the obligation."  *United States v. York*, No. 9-470-B-W, 2010 U.S. Dist. LEXIS 53532, at *11 (D. Me. May 5, 2010) (quoting *United States v. Petroff-Kline*, 557 F.3d 285, 290 (6th Cir. 2009)).  Mr. Richmond's contention that U.S. Bank did not properly serve him with a notice of default is, therefore, an affirmative defense.  As the Court has noted, Mr. Richmond has never answered the complaint and, instead, on June 5, 2023, the Court ordered the Clerk to enter a general denial of its allegations without affirmative defenses.  *Order Denying Def.'s Mot., Entering General Denial, and Imposing* "Cok" *Sanctions* at 3 (ECF No. 91).  Mr. Richmond may not raise at this stage an affirmative defense to U.S. Bank's action on the promissory note.

Next, if the Court reached the merits of Mr. Richmond's argument, it would not be convinced.  Mr. Richmond says that if he is in default, the note required that the bank give notice of default by first class mail.[4]  *Def.'s Mot.* at 3.  Mr. Richmond

---

[4]     The Court could not locate the language Mr. Richmond quoted, but it found similar language in the promissory note U.S. Bank attached to its complaint, except Mr. Richmond says the provision is permissive. *Def.'s Mot.* at 3 ("If I am in default, the Note Holder <u>may</u> send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay

contends that U.S. Bank demonstrated that it sent him notice of default by certified mail, not by first class mail, and therefore it violated the conditions of the note. *Id.* at 3-4. First, Mr. Richmond cites no authority for his view that if U.S. Bank provided him notice of default by certified mail, it would not be deemed to have complied with the notice requirement of the note, and the Court is skeptical, absent some authority supporting his proposition, that the law would be so exacting in the face of actual notice to the debtor, especially since certified mail, as opposed to first class mail, is a surer way to make certain that the debtor actually received notice and to confirm when the debtor received notice.

Second, as U.S. Bank has pointed out, when he signed the note, Mr. Richmond waived presentment and notice of dishonor. *Pl.'s Opp'n* at 4 (quoting ¶ 10 of the promissory note). "Presentment means the right to require the Note Holder to demand payment of amounts due." *Linn v. Option One Mortg.*, No. 1:22-cv-11535-IT, 2024 U.S. Dist. LEXIS 8830, at *18 (D. Mass. Jan. 17, 2024). The effect of the waiver of rights of presentment and notice of dishonor is that it gives the note holder "the ability to collect default penalties from [the promisors] without formally informing them." *DLJ Mortg. Cap., Inc. v. Perez*, No. 16-2069 (BJM), 2021 U.S. Dist. LEXIS 156242, at *9 (D.P.R. Aug. 18, 2021). The courts have generally upheld such waivers. *Linn*, 2024 U.S. Dist. LEXIS 8830, at *18; *U.S. Bank Tr. N.A. v. Thomas*, No. 2:19-cv-00361-JDL, 2022 U.S. Dist. LEXIS 176824, at *16-17 (D. Me. Sept. 29, 2022).

---

immediately the full amount of Principal that has not been paid and all the interest I owe on that amount").

Based on this analysis, Mr. Richmond's efforts to generate an issue concerning U.S. Bank's notice of default to him by certified mail must fail.

### 4.    Judgment Amount

Mr. Richmond objects to the judgment amount he believes the Court will order. *Def.'s Mot.* at 5.  Here, he is simply mistaken.  The Court has not yet issued a final judgment against Mr. Richmond.  In its order granting judgment, the Court granted judgment "subject to the bank's supplying the final current figures owed on the note," *Order Granting J.* at 1, and expressly ordered U.S. Bank to provide an accounting to the Court before a final judgment would issue.  *Id.* at 14.  Mr. Richmond's objections have delayed this final act.  Under the terms of this order, the Court is again ordering U.S. Bank to provide an accounting, and the Court has given Mr. Richmond a short period to object to U.S. Bank's submission.

### 5.    Foreclosure Law

In his motion, Mr. Richmond cites several provisions of Maine's statutory foreclosure law.  *Def.'s Mot.* at 5.  The Court agrees with U.S. Bank that these citations are irrelevant to its action to collect on the promissory note.

### 6.    Under Seal and Waiver/Forfeiture of Affirmative Defenses

Mr. Richmond claims that U.S. Bank's action on the promissory note is barred by Maine's six-year statute of limitations, *id.* at 7, and objects, once again, to the Court's entering a general denial answer for him after he disobeyed multiple orders requiring him to file an answer to the complaint.  *Id.* at 7-8.  A statute of limitations defense is an affirmative defense.  FED. R. CIV. P. 8(c)(1) (listing statute of limitations

17

as an affirmative defense).  Even now, Mr. Richmond has failed to file an answer to U.S. Bank's complaint and has waived or forfeited the right to assert a statute of limitations bar to its complaint.[5]  On this point, the Court reiterates its conclusions in its November 24, 2025 order rejecting his earlier motion for reconsideration, *Order on Mot. for Recons.* at 10-11 (ECF No. 246) (*Recons. Order*), and declines to allow him to assert an affirmative defense he has steadfastly refused to assert in an answer.

### 7.    Promissory Note Evidence at Foreclosure Trial

Mr. Richmond accuses the Court of violating its own order when it considered evidence presented at the foreclosure trial in issuing its order granting judgment. *Def.'s Mot.* at 9.  He is wrong.  The Court only assured Mr. Richmond that its findings at the close of the foreclosure trial would not be admitted before the jury at the January 5, 2026 jury trial.  *Recons. Order* at 7-9.  The Court did not state that it would not consider the evidence presented during the foreclosure trial in evaluating whether to impose a sanction for his misconduct, and the Court is aware of no bar preventing the Court from considering the entire docket, including the evidence at the foreclosure trial, in evaluating whether to issue a sanction and what that sanction should be.  In fact, the First Circuit has expressly advised trial judges to consider the entire record, not a single event, in determining whether to impose sanctions and, if

---

[5]    A court may dismiss a complaint if the pleader's allegations make it clear that the asserted claim is time barred.  *Calderón-Amézquita v. Rivera-Cruz*, 158 F.4th 54, 64 (1st Cir. 2025); *Martin v. Somerset Cnty.*, 86 F.4th 938, 942 (1st Cir. 2023).  But as the complaint itself alleges that Mr. Richmond signed the promissory note under seal, *Compl.* ¶ 2, and Maine has a twenty-year statute of limitations for promissory notes signed under seal, 14 M.R.S. § 751, this exception to waiver does not apply.

18

so, what the sanction should be. *See Mariani v. Drs. Assocs., Inc.*, 983 F.2d 5, 7 (1st Cir. 1993).

### 8. Rule 37 Sanctions and *Vivaldi*

In its December 22, 2025 Order Granting Judgment, the Court highlighted the case of *Vivaldi Servicios de Seguridad, Incorporated v. Maiso Group, Corporation*, 93 F.4th 27 (1st Cir. 2024), in which the First Circuit addressed whether a party could be defaulted for failing to appear at a final pretrial conference. *Order Granting J.* at 10-13. In his motion to reconsider, Mr. Richmond contends that although the Court cited *Vivaldi*, it "**failed to apply its standards**." *Def.'s Mot.* at 18 (emphasis in original). Mr. Richmond says "[t]his suggests either: (1) the Court did not carefully read *Vivaldi*, or (2) the Court read *Vivaldi*, recognized it required findings the Court could not make, and proceeded with the sanction anyway." *Id.*

Mr. Richmond maintains that the Court failed to apply the *Vivaldi* mandatory standards for dismissal or default, asserting that the Court "made no findings regarding the severity of the violation, deliberateness, mitigating circumstances, prejudice to the Plaintiff, or adequacy of lesser sanctions." *Id.* Mr. Richmond asserts that the Court imposed the drastic sanction of default "for a single violation with substantial mitigating circumstances, no prejudice to the opposing party, no warning, and no consideration of alternatives-all in direct violation of First Circuit precedent, when the exact same prior conduct raised nary an eyebrow." *Id.*

The Court has revisited *Vivaldi* and its December 22, 2026 order and rejects Mr. Richmond's criticism. The First Circuit posed the issue in *Vivaldi* as:

> May a district court dismiss a case for counsel's unexcused failure to appear at the final pretrial conference when this is the first and only instance of non-compliance and the district court did not consider a lesser sanction?

93 F.4th at 29. In its December 22, 2025 order, the Court spent thirteen pages documenting Mr. Richmond's long history of obstruction, disrespect, and delay in this case. *Order Granting J.* at 1-13. Thus, the Court directly addressed the most significant *Vivaldi* factor: whether "this was the first and only instance of non-compliance." 93 F.4th at 29. It manifestly was not.

In responding to the other *Vivaldi* factors, the First Circuit has not demanded that the district court hold up each factor, examine it, and make a separate pronouncement on each. Instead, the Court reviewed Mr. Richmond's obstructionist and disrespectful history with the Court to satisfy the First Circuit's directives. The Court noted Mr. Richmond's economic incentive to remain in his residence without paying the promissory note, his adamant refusal to file an answer to the complaint, his persistent derogatory and disrespectful language, including accusing the Court of lying in open court, his submission of AI generated hallucinogenic citations, and his response to the order to show cause, which castigated the Court for his failure to comply with its orders. This is just some of the history set forth in the Court's December 22, 2025 order and establishes that Mr. Richmond was indeed deliberate in his misconduct and that when offered the opportunity to mitigate his conduct, he instead attacked the Court.

The prejudice to the other side is apparent. U.S. Bank filed suit in 2021 and it has yet to obtain a final judgment in its lawsuit due to Mr. Richmond's pattern of

20

obstruction and misconduct.  As the Court described it, the impact on the operations of the court is manifest.  The Court could not go forward with the January 5, 2026 jury trial because Mr. Richmond had not participated in the proceedings necessary for the Court, the Clerk's Office, and the parties to prepare for trial, and the Court had no assurance that if it continued the trial to a later term of court, it would not be dealing with the same issues of obstruction.  In these circumstances, given the history of this case, what effective lesser penalty could reasonably be imposed is difficult to imagine, because Mr. Richmond, as the Court has documented, has failed to comply with the most basic orders of the Court from the outset of this case.  As the Court suggested, a lesser sanction would be ineffective because Mr. Richmond would ignore the order and attack the Court for issuing it.[6]

---

[6]      Mr. Richmond's more prominent litigation tactic is to provoke the Court, force the Court to issue an order, and then complain about the order.  One of many examples is his refusal to file an answer to the complaint.  U.S. Bank filed its complaint on July 29, 2021, *Compl.*, and served Mr. Richmond with a summons and complaint on September 13, 2021.  *Summons* (ECF No. 6).  Mr. Richmond was required to file an answer by October 4, 2021.  He refused to file an answer and has defied eight orders to so do.  *Order on Mot. to Dismiss and Order to Answer Compl.* (ECF No. 88).  On June 5, 2023, instead of defaulting Mr. Richmond, the Court issued an order, entering a general denial on his behalf.  *Order Denying Def.'s Mot., Entering General Denial, and Imposing* "Cok" *Warning* (ECF No. 91).  Having provoked the Court into entering a general denial, so that a scheduling order could issue, Mr. Richmond repeatedly attacked the Court for its response.  *See Def.'s Mot.* at 7.

This absurd situation persists even today; Mr. Richmond has still not filed an answer to the complaint.  On November 19, 2025, Mr. Richmond moved for leave to file an answer to the complaint.  *Def.'s Reply in Support* at 3 (ECF No. 244).  On November 24, 2025, the Court granted Mr. Richmond's motion and allowed him to file an answer to the complaint, even though he was filing it more than four years after he should have filed it.  *Order on Mot. for Recons.* (ECF No. 246).  The Court did not allow Mr. Richmond to assert any affirmative defenses, which the Court deemed waived, and required him to file an answer within fourteen days of November 24, 2025.  *Id.* at 12.  But Mr. Richmond ignored this order, the nineth order requiring him to file an answer to the complaint, and Mr. Richmond is still attempting to use the Court's directive to the Clerk to enter a general denial as a ground for the Court to reconsider its order granting judgment to U.S. Bank.  *Def.'s Mot.* at 7-8.

This is but one example of Mr. Richmond's history of ignoring this Court's orders and attacking the Court whenever it responded.  The Court has no reason to believe that if it had ordered a lesser sanction, Mr. Richmond would have complied with it.

## B.    Judicial Bias and Recusal

The Court views as patently frivolous Mr. Richmond's motion to disqualify this Judge.  U.S. Bank's foreclosure count was the most significant of the counts in its five-count complaint, because the foreclosure, if granted, would have allowed U.S. Bank, after the expiration of the redemptive period, to remove Mr. Richmond from his Nobleboro residence, place it up for public sale, and apply the proceeds of the public sale to his indebtedness.  14 M.R.S. §§ 6321, 6323, 6324.  On October 27, 2025, the Court issued a forty-five-page order, ruling in Mr. Richmond's favor on the foreclosure count.  *Findings of Fact and Conclusions of Law* at 1-45.  It seems too obvious to say, but no reasonable person knowing all the facts, would harbor doubts concerning the judge's impartiality, when the judge had ruled in favor of the complaining litigant.  *See Liljeberg*, 486 U.S. at 860-61.

As of early December 2025, the Court was prepared to preside over a jury selection and trial to resolve the remaining jury-eligible counts in U.S. Bank's complaint, and if Mr. Richmond had complied with the Court's most basic orders, the jury trial would have proceeded on January 5, 2026.  When Mr. Richmond failed to file a final pretrial memorandum and to appear at the scheduled final pretrial conference, without informing the Court, the Court issued an order to show cause and offered him a chance to explain his conduct and avoid a judgment in favor of U.S. Bank on the promissory note count.  *O.S.C.* at 1-2.  Instead of responding to the content of the Court's order, Mr. Richmond filed a response that never directly answered the Court's concern but instead attacked the Court, claiming the Court was

22

biased eleven times, never acknowledging his non-compliance. *Affirmation in Opp'n to O.S.C.* at 1-3.

### C. Stay

Mr. Richmond has presented no legitimate reason for this Court to stay a case that has been pending since July 29, 2021.

### D. Amount of Judgment

Before issuing a final judgment, the Court ORDERS U.S. Bank National Association to provide within seven days of the date of this order a final updated figure of the amounts due under the promissory note. *See Simon Aff.*

In reviewing the amounts claimed as of December 29, 2025, the Court observes that U.S. Bank appears entitled to be repaid the principal balance, accrued interest, and attorney's fees and costs. The Court found no evidence under the terms of the note, that U.S. Bank is entitled to reimbursement for escrow advance payment, including taxes and insurance. If U.S. Bank contends that these amounts are collectible under the note, it must file a brief memorandum explaining the basis for its claim. Also, although U.S. Bank stated that it has expended $130,837.50 in attorney's fees and $1,138.53 in costs, before the Court will order that amount as part of the judgment, U.S. Bank must submit a bill reflecting the claimed legal services and excluding legal services for the foreclosure count on which it was not successful. If U.S. Bank contends that it is entitled to legal fees to prosecute the failed foreclosure count, it must provide the Court with legal authority for its position within seven days of the date of this order. If Mr. Richmond wishes to object to the amounts U.S.

Bank is claiming, he must do so within seven days of the date of U.S. Bank's response to this order.

## V.   CONCLUSION

The Court DENIES Defendant's Motion to Reconsider Default Order Pursuant to Local Rule 7(f), for Stay of Proceedings, and for Disqualification of the Court Pursuant to 28 U.S.C. § 455(a) and (b) (ECF No. 261).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 20th day of March, 2026